1  Summer Shaw, Esq. (SBN 283598)
   SHAW & HANOVER, PC
2  42600 Cook Street, Suite 210
   Palm Desert, CA  92211
3  Telephone No:(760) 610-0000
   Facsimile No: (760) 687-2800
4  Email: ss@shaw.law
   *Proposed Counsel for*
5  *Karl T. Anderson, Chapter 7 Trustee*

6

7

8              **UNITED STATES BANKRUPTCY COURT**
      **CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**
9

10 In re:                          | Case No.:    6:21-bk-15157-MH
                                   | Chapter:      7

11                                 **CHAPTER 7 TRUSTEE'S NOTICE
                                   OF MOTION AND MOTION FOR AN**
12                                 **ORDER:**

13 ROBERT NATHAN REICHER
   SUZANNE P. CARTER-REICHER,     1. **DISALLOWING THE DEBTORS'**
14                                    **CLAIM OF EXEMPTION IN REAL**
                                      **PROPERTY;**
15                                 2. **DISALLOWING THE DEBTORS'**
                                      **CLAIM OF EXEMPTION IN A**
16                                    **BANK ACCOUNT; AND**
17                                 3. **TURNOVER OF NON-EXEMPT**
                                      **FUNDS IN THE BANK ACCOUNT**
18                                    **TO THE TRUSTEE;**

19                                 **WITH MEMORANDUM OF POINTS AND**
                                   **AUTHORITIES; DECLARATION OF**
20                                 **KARL ANDERSON AND SUMMER SHAW**
                                   **IN SUPPORT THEREOF**
21

22                                 Hearing Date:
                                   Date:  **October 26, 2022**
23                                 Time:  **11:00 a.m.**
                                   Crtrm: **Courtroom 301**
24              Debtors.           Place: **3420 Twelfth Street, Riverside, CA 92501**

25         **TO THE HONORABLE MARK HOULE, UNITED STATES BANKRUPTCY**

26 **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; ROBERT NATHAN**

27 **REICHER AND SUZANNE P. CARTER-REICHER, DEBTORS; AND ALL INTERESTED**

28 **PARTIES AND/OR THEIR RESPECTIVE COUNSEL OF RECORD:**



-1-

**PLEASE TAKE NOTICE** that, on October 26, 2022, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 301 of the above-entitled Court, located at 3420 Twelfth Street, Riverside, California 92501, before the Honorable Mark Houle, United States Bankruptcy Judge, presiding, Karl Anderson, the duly appointed Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Robert Nathan Reicher and Suzanne P. Carter-Reicher (the "Debtors"), will and hereby submits this Chapter 7 Trustee's Motion For An Order: 1. Disallowing The Debtors' Claim Of Exemption In Real Property; 2. Disallowing The Debtors' Claim Of Exemption In A Bank Account; And 3. Turnover Of Non-Exempt Funds In The Bank Account To The Trustee (the "Motion") relating to the real property located at 37300 Medjool Avenue, Palm Desert, CA 92211 (the "Property") in the amount of $456,000.00; and relating to a bank account held by Debtors at Union Bank and known by an account number ending in 9500 ("Bank Account") (Bank Account and Property collectively referred to as "Estate Property") on the grounds that the Debtors are not entitled to the exemption amounts claimed on the Debtors' Schedule C in the Estate Property for the reasons discussed below and the non-exempt funds in the Bank Account should be turned over to the Trustee immediately.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the Notice of Motion and Motion, the memorandum of points and authorities and declaration of Karl Anderson and Summer Shaw in support thereof, the documents and pleadings on file herein, all judicially noticeable facts, the arguments and representations of counsel, and such other evidence as may be presented prior to or at the scheduled hearing.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any interested party that wishes to oppose the relief requested in the Motion must file not later than 14 days prior to the scheduled hearing date, with the Clerk of the Bankruptcy Court, located at 3420 Twelfth Street, Riverside, California 92501, and serve upon the Office of the United States Trustee, located at 3801 University Avenue, Suite 720, Riverside, CA 92501, and the Trustee's proposed counsel, located at the address indicated on the upper left corner of the first page of this notice, "[a] complete written statement of all reasons in opposition thereto ..., declarations and copies of all photographs and documentary



evidence on which the responding party intends to rely and any responding memorandum of points and authorities."

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(h), failure to file and serve a timely response may be deemed consent to the relief requested in the Motion.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

1. Granting the Motion;

2. Disallowing the homestead exemption in the amount claimed by Debtors and entering an order that the Debtors' homestead exemption is limited to $170,350.00, combined for both debtors;

3. Determining $14,306.62 in the Debtors' Bank Account are non-exempt property of the estate ("Non-exempt Funds");

4. Requiring Debtors to turnover of the Non-exempt Funds to the Trustee within five (5) business days of entry of an order on this Motion; and

5. Granting such other and further relief as is just and appropriate in the circumstances.

DATED:        September 26, 2022                    Respectfully submitted,

                                                    /s/ Summer Shaw

                                                    _____
                                                    Summer Shaw, Proposed Counsel for
                                                    Karl T. Anderson, Chapter 7 Trustee

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3

Through this Motion, the Trustee seeks an order:

4     1.   Disallowing/limiting the Debtors' claimed homestead exemption ("HSE") in the

5          Property; and

6     2.   Disallowing/limiting the Debtors' claimed exemptions in the Bank Account.

7

Specifically, the Debtors seek a HSE in the Property in the amount of $456,000.00

8   ("Claimed HSE") under California Code of Civil Procedure § 704.730, despite the fact that they

9   purchased the Property in the 1215 days prior to the filing of their bankruptcy case with nonexempt

10  funds that were not derived from the sale of a prior residence. Here, there is no evidentiary basis

11  supporting the claimed exemption under § 704.730 in the amount claimed and at most, Debtors,

12  combined, are entitled to a HSE in an amount of $170,350.00. Therefore, the Trustee's objection to

13  the Claimed HSE must be sustained.

14

As to the Bank Account, Debtors claim they are entitled to claim all of the funds in the Bank

15  Account as exempt pursuant to CCP § 704.120 ("UEI Exemption"), and CCP § 704.080 and 42

16  USC § 407 (collectively the "SSI Exemptions") (The UEI Exemption and the SSI Exemptions are

17  collectively referred to as the "Claimed Account Exemptions"). However, after further evidence

18  was obtained by the Trustee it will be proven below that non-exempt funds were commingled with

19  the exempt funds over several years prior to the Petition Date. Therefore, the Claimed Account

20  Exemptions in the Bank Account should be disallowed in the amount of $14,306.62 as explained in

21  detail below.

22

### II.    STATEMENT OF RELEVANT FACTS

23

On September 29, 2021 (the "Petition Date"), the Debtors filed a voluntary petition

24  under Chapter 7 of the Bankruptcy Code. Thereafter, Karl Anderson was appointed as

25  the Chapter 7 Trustee of the Debtor's bankruptcy estate.

26

### A. Facts relating to the Claimed Homestead Exemption.

27

According to the Debtors' schedules and statement of affairs (collectively,

28  the "Schedules" – Docket No 1), on *Schedule A/B: Property*, the Debtors scheduled their



interest in the real property commonly known as 37300 Medjool Avenue, Palm Desert, California 92211 (the "Property"), which is a single family residence. Pursuant to Rule 201 of the Federal Rules of Evidence ("FRE"), the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and *Schedule A/B: Property*, true and correct copies of which are attached hereto as **Exhibit 1** and incorporated herein by reference. The Property is scheduled as having a market value of "$430,000" with the Debtors having a current value of "$288,100.00" (i.e. Debtors are alleged to own a 67% interest in the Property). The Debtors represented that they purchased the Property with Debtor's mother, Elanor G. Reicher ("Ms. Reicher"). The Trustee believes the Property is currently worth approximately $520,000.00.

According to the Debtors' Schedules, on *Schedule C: The Property You Claim as Exempt*, the Debtors asserted an exemption in the Property in the amount of $456,000.00 under California Code of Civil Procedure § 704.730 (the "Claimed HSE"). Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and *Schedule C: The Property You Claim as Exempt*, a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated herein by reference.

The Debtors' Schedules, on *Schedule D: Creditors That Have Claims Secured by Property,* provide that there is a reverse mortgage of $183,937.00 on the Property. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and *Schedule D: Creditors That Have Claims Secured by Property*, a true and correct copy of which is attached hereto as **Exhibit 3** and incorporated herein by reference.

The Trustee's investigation into the Debtors' assets and liabilities has revealed that the Debtors purchased the Property on or about November 16, 2018, for $312,000.00. A copy of the Final Closing Statement with proof of funds deposited with the Debtors' escrow company ("Property Closing Statement") provided to Trustee's counsel by Debtors through their counsel, itemizing the Debtors' purchase of the Property as well as corresponding evidence to show where



the "down payments" came from, which is attached hereto as **Exhibit 4**. The Property Closing

Statement shows the "buyers" deposited to escrow "down payments" totaling $169,800.00

("Down Payment"), of which "Brent Ball or Christina Ball" deposited to escrow $40,000.00,

labeled as a "Third Party Deposit." *See* Exhibit 4 at page 1. The evidence provided by Debtors to

itemize the Down Payment on the Property shows that the Debtors put $129,800.00 into escrow as

their portion of the Down Payment on the Property (i.e. 76.44% of the Down Payment). *See*

Exhibit 4 at page 4 through 6. The Third Parties put down the rest of the funds of the Down

Payment (i.e. $40,000.00 or 23.56% of the Down Payment). *See* Exhibit 4 at page 7. Debtors

advised the Trustee, again, through their counsel, that the "$40,000 down payment on the home

came from the debtors' daughter and son-in-law, Brent & Christina Ball. They pitched in to meet

the shortfall for their parents and grandmother."[1]

Debtors contended that they were entitled to the Claimed HSE because they alleged to have

purchased the Property with funds from the sale of their previous residence known as 44 Baycrest

Court, Newport Beach, CA 92660 ("Prior Property"). However, the "Final Closing Statement"

itemizing the sale of the Prior Property ("Prior Property Statement") showed that Debtors only

received net proceeds from the sale of the Prior Property in the amount of $49,018.06. *See* **Exhibit**

**5** for a copy of the Prior Property Statement provided to the Trustee by Debtors through their

respective counsel. The Prior Property Statement also shows that the Debtors owed unpaid late

interest for June through September 2018 totaling almost $13,000.00 and late fees of

approximately $247.00, to their then first deed of trust holder ("1st DOT"). *See* Exhibit 5 at page 1.

In addition to being behind on the 1st DOT, it appears the Debtors were required to pay collection

debt of some kind in the amount of $4,000.00. *See* Exhibit 5 at line item for payment to

"Southwest Collection Services, Inc.."

Additionally, Debtors appeared to have had other financial issues, in addition to the 1st DOT,

at the time they sold their Prior Property and purchased the Property. Debtors' Schedule D lists a

judgment lien owing by Debtors in approximately $10,000.00 ("Judgment Lien"), to Citibank, NA

---

[1] It is the Trustee's position that the Debtors own at the very least 76.44% of the Property and possibly 100%. However, this issue will be addressed separately and after the Court determines the allowed amount of the Debtors' HSE.



(the "Judgment Lienholder"). *See* Exhibit 3 at page 1. Additionally, *Schedule E/F: Creditors That Have Unsecured Claims*, lists unpaid income taxes of approximately $13,000.00 for tax years 2013 and 2014. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and *Schedule E/F: Creditors That Have Unsecured Claims*, a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated herein by reference. *See* Exhibit 6 at pages 9 and 10. Finally, Debtors' Schedule E/F also lists a debt owing to Wells Fargo Bank in the amount of approximately $6,700.00 relating to a "Voluntary Surrender" on an "Automobile Loan" that was "Last Active 11/2018." *See* Exhibit 3 at page 13.

Lastly, Debtors, through their counsel in a letter to the Trustee, dated August 18, 2022, alleged that Ms. Reicher "contributed the down payment of the home and the ongoing payments of the home." However, as discussed above, Ms. Reicher did not contribute any of the Down Payment and no "ongoing payments of the home" appear to be required as Debtors have asserted that there is only a Reverse Mortgage owing against the Property; in fact, the Reverse Mortgage only grows larger with each day that passes. Additionally, Debtors have alleged that they pay 100% of the expenses associated with the Property as stated in the Debtors' *Schedule J: Your Expenses*. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and *Schedule J: Your Expenses*, a true and correct copy of which is attached hereto as **Exhibit 7** and incorporated herein by reference. *See* Exhibit 7 at lines 4 through 6.

**B. Facts relating to the Claimed Account Exemptions In the Bank Accounts.**

According to the Debtors' *Schedule A/B: Property*, the Debtors scheduled their interest in a "Joint Checking Account" held at Union Bank and known by a number ending in 9500 ("Bank Account"). *See* **Exhibit 1** at page 4. The Bank Account is scheduled as having a market value of "20,519.00" on the Petition Date.

According to the Debtors' Schedules, on *Schedule C: The Property You Claim as Exempt*, the Debtors asserted an exemption in the full value of the Bank Account in the amount of $20,519.00 pursuant to CCP § 704.120 ("UEI Exemption"), CCP § 704.080, and



pursuant to 42 USC § 407 (collectively the "SSI Exemptions") (The UEI Exemption and the SSI Exemptions are collectively referred to as the "Claimed Account Exemptions"). The Debtors initially represented that the Bank Account was used for depositing Social Security Income ("SSI") funds and Unemployment Income ("UEI") funds only into the account.

However, Trustee did an investigation into the origination of the funds held in the Bank Account and was provided documents, by the Debtors, through their respective counsel, that show the Debtors had deposited more than just SSI and UEI into the Bank Account. In fact, the Trustee obtained banking records for October 2019 through September 2021/the Petition Date which show that the Debtors deposited various non-exempt funds into the Bank Account over this entire period of time.

**III.**    **LEGAL ARGUMENT.**

**A.**    **THE TRUSTEE POSSESSES THE REQUISITE STANDING TO COMMENCE THIS MOTION AND THE MOTION IS TIMELY**

Rule 4003 of the Federal Rules of Bankruptcy Procedure ("FRBP") sets forth the requirement that a debtor file a list of his or her exempt property under 11 U.S.C. § 522 on the schedule of assets to be filed by Rule 1007. Rule 4003(b) governs the commencement of objections to claimed exemptions. In this regard, Rule 4003(b)(1) provides, in pertinent part, as follows:

> "Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."

Fed. R. Bankr. Proc. 4003(b)(1).

**B.**    **THE DEBTOR OVERSTATE THEIR CLAIMED HOMESTEAD EXEMPTION IN THE PROPERTY**

§ 522(b) of the Bankruptcy Code provides an individual debtor with a choice between federal and state exemption systems unless the applicable state prohibits its debtors



1  from electing the federal exemptions. Pursuant to § 703.130 of the California Code of

2  Civil Procedure ("CCP"), California has expressly prohibited its debtor-citizens from

3  claiming exemptions pursuant to § 522(d) of the Code. Instead, California has established its own

4  alternate exemption system. In California, a debtor may choose either the exemptions provided

5  under § 703.140 or those found in Sections 704.010, et seq., of the California Code of Civil

6  Procedure. Generally, under the California system, homestead exemptions are codified in

7  § 704.730(a) of the CCP. It is generally accepted that a debtor may elect the exemptions set forth

8  in § 704.730(a), provided that the debtor is eligible for an exemption as of the date of the petition.

9  *In re Dore*, 124 B.R. 94, 98 (Bankr. S.D. 21 Cal. 1991).

10      As discussed above, the Debtors claimed a $456,000.00 homestead exemption in the

11  Property pursuant to CCP § 704.730 pursuant to California's exemption statutes ("Claimed HSE").

12  While the Debtors appear to maintain a legal basis to assert a homestead exemption in the

13  Property, the amount asserted by the Debtors in Schedule C is incorrect. At most, under §

14  522(p)(1)(D), the Debtors' claim of a homestead exemption is limited to $170,350.00 because the

15  Debtors used non-exempt funds to purchase the Property. Here, there simply is no evidentiary

16  basis supporting the Claimed HSE. Therefore, the Trustee's motion to disallow the Claimed HSE

17  must be granted. To the extent that the Trustee's Objection is overruled, the Trustee would

18  otherwise, abandon the Property upon such an order being entered and becoming final.

19      In this regard, it is the Debtor's burden to demonstrate their entitlement to the Claimed

20  HSE. Pursuant to CCP § 703.580(b), "[a]t a hearing under this section, the exemption claimant has

21  the burden of proof." *See*, also CCP §704.780(a). "[W]here a state law exemption statute

22  specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that

23  allocation." *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016); see also

24  *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000) (holding

25  that the burden of proof is a substantive element of state law applicable when federal courts apply

26  state law). As such, the Debtors have the burden of proving they are entitled to the claimed

27  exemptions they asserted as of the Petition Date, which is the date exemptions are determined. See

28  *In re Mayer*, 167 B.R. 186, 188 (B.A.P. 9th Cir. 1994) (exemptions are determined as of date



1    bankruptcy petition is filed).  The Trustee has demonstrated why this burden cannot be satisfied.

2        Simply stated, the Debtor's assertion of a $456,000.00 homestead exemption is

3    improper and the Trustee's objection must be sustained. The Debtors, jointly, under the

4    California law/exemption statute they claim the Claimed HSE, are only entitled to one HSE, and

5    that amount is limited to $170,350.00 pursuant to § 522(p).[2] *See* CCP § 703.110.

6    ## C. THE DEBTORS OVERSTATE THEIR EXEMPTION IN THE BANK

7    ## ACCOUNT.

8        As discussed above, the Trustee received bank statements from the Debtors, through

9    respective counsel, for October 2019 through September 2021, for the Bank Account. Because

10    there was a commingling of non-exempt funds with the SSI deposits, throughout the use of the

11    Bank Account for as far back as the Trustee has been provided bank statements, Trustee contends

12    that the funds attributable to the SSI Exemption are at most, $5,698.00 ("Exempt SSI Funds")

13    based on the "lowest intermediate balance rule." See *Salameh v. Tarsadia Hotels* (S.D. Cal. 2015)

14    ("Pursuant to this principle, the exempt funds may not exceed the lowest balance occurring at any

15    time between the deposit of the exempt funds and the time of levy, and new deposits do not

16    replenish the original exempt funds although the new deposits may themselves be exempt. See

17    *Franco*, 2015 WL 1383525, at *4 n.4; *Republic Supply Co. v. Richfield Oil Co.*, 79 F.2d 375, 379-

18    80 (9th Cir. 1935) [explaining the "lowest intermediate balance rule" ("LIBR") in the context of

19    commingled funds in a trust].

20

21    _____

    [2] The Debtors, most recently have asserted that they are ***each*** entitled to a HSE of $170,350.00

22    pursuant to § 522(m). However, it is the Trustee's contention that 522(m) refers to exemptions
    claimed under the federal exemption scheme, not the state exemption scheme, which is clearly

23    limited to one HSE per married couple. Here, Debtors are claiming a HSE pursuant to ***California
    state*** exemption statutes which allows only one HSE claimed per married couple. If 522(m) is read

24    to allow each debtor in a joint case, to claim a separate ***state*** HSE when it is limited due to a
    purchase within 1215 days of the Petition Date, Debtors in this "1215 Period" claiming a HSE

25    under state law, would have been/would be better off than those debtors whose HSE was *not*
    limited pursuant to 522(p), and it would obliterate the "1215 Period Penalty" for having purchased

26    a residence in the 1215 Period, at least up until recently, when the California HSE was increased
    (i.e. A married couple who were claiming the California HSE of $175,000, not limited by 522(p),

27    would be allowed to just that. According to Debtors' argument in this case, if 522(p) limited that
    same couple to the $125,000.00 cap at that time, this couple would be allowed to claim a total

28    California HSE of $250,000.00 based on 522(m). Again, this would put 1215 Period cases in a
    ***better*** position than those cases not being penalized by a 1215 Period purchase].



Based on a thorough analysis of the Bank Account, the following assertions are asserted by the Trustee to show that, at most, $5,698.00 of the $20,519.00 sitting in the Bank Account on the Petition Date were exempt:

- As of September 18, 2019, the Bank Account had $1,885.93, funds which are not traced to any exempt origination, therefore, the Trustee can only assume those are non-exempt funds;

- In the September-October 2019 statement provided to the Trustee, the Debtors deposited $1,556.03 of non-exempt funds in the Bank Account and SSI of $2,127.00, and spent down less than deposits into the Bank Account, leaving a balance of $3,040.41, of which all would be non-exempt under the LIBR;

- In the October-November 2019 statement, the Debtors deposited $2,947.56 of non-exempt funds into the Bank Account and $2,127.00 of SSI funds, and spent down less than deposits into the Bank Account, leaving a balance of $3,035.22, of which all would be non-exempt under the LIBR;

- Again, in the November- December 2019 statement, the Debtors deposited $2,550.04 of non-exempt funds into the Bank Account and $2,127.00 of SSI funds, and spent down less than deposits into the Bank Account, leaving a balance of $3,099.26, of which all would be non-exempt under the LIBR;

- This similar pattern continues[3] over the next several months, at which point, on March 18, 2020, the account begins with a balance of $3,641.42. The March-April 2020 statement shows that SSI funds of $2,154.00 were deposited into the Bank Account and $2,506.32 of non-exempt funds were deposited in the Bank Account with less spent down less than deposits into the Bank Account, leaving a balance of $5,962.42, of which all would be non-exempt under the LIBR;

- The April-May 2020 statement shows that SSI funds of $2,154.00 were deposited into the Bank Account and $4,035.00 of non-exempt funds were deposited in the Bank Account with slightly more spent down, than deposits into the Bank Account, leaving a balance of

---

[3] The December-January 2020 bank statement ends with a balance of $3,127.61, the January-February 2020 bank statement ends with a balance of $3,284.44, and the February-March 2020 bank statement ends with a balance of $3,641.42.



$5,851.42, of which all would still be non-exempt under the LIBR;

- In the May-June 2020 Statement only $50 of non-exempt funds[4] goes into the account and less than the deposits are spent down from the Bank Account, so the account contains $5,901.42 of non-exempt funds with a $9,443.56 balance in the account at the end of the month;

- In the June-July 2020 statement, $2,100.00 more of non-exempt funds go into the account, along with $8,154.00 of exempt funds (SSI and UEI), and less than this amount is spent out of the Bank Account leaving a balance in the Bank Account of $13,508.95. Again, it is the Trustee's contention that under the LIBR the $2,100.00 inures to non-exempt funds leaving a total of $8,001.42 of non-exempt funds in the Bank Account at this point in time;

- Again, in the July-August 2020 statement, another $1,863.50 of non-exempt funds are deposited into the account, the rest of the deposits are exempt funds, and again less than this amount goes out of the Bank Account. Therefore, it is the Trustee's contention that under the LIBR the $1,863.50 inures to non-exempt funds leaving a total of $9,864.92 of non-exempt funds in the Bank Account at this point in time;

- The September, October & November 2020 statements show only another $363.85 of non-exempt funds are deposited into the account, and again less than the deposits for all of these months are spent out of the Bank Account. Therefore, it is the Trustee's contention that under the LIBR the $363.85 inures to non-exempt funds leaving a total of $10,228.77 of non-exempt funds in the Bank Account as of November 18, 2020 leaving a total balance of $14,839.21 in the account;

- No non-exempt funds are deposited into the Bank Account after November 18, 2020, and the withdrawals never exceed the amount deposited into the account through January 16, 2021, and the account balance for the Bank Account is $15,979.36 with the same $14,839.21 of non-exempt funds remaining in the account.

- In the January-February 2021 statement, Debtors deposit $1,200.00 of non-exempt funds

---

[4] The Trustee has confirmed that the transfers that appear in this month's statement are unemployment income funds that were transferred by the Debtor from his California Unemployment BofA account, to the Bank Account.



into the Bank Account, and again less than this amount is spent out of the Bank Account. Therefore, it is the Trustee's contention that under the LIBR the $1,200.00 inures to non-exempt funds leaving a total of $11,428.77 of non-exempt funds in the Bank Account at this point in time;

- No non-exempt funds are deposited into the Bank Account during the time covering the February-March 2021 statement and the withdrawals never exceed the amount deposited into the account, so by March 18, 2021, the account balance for the Bank Account is $19,388.47 with the same amount of non-exempt funds ($11,428.77) remaining in the Bank Account.

- In the March-April 2021 statement, Debtors deposit $2,800.00 of non-exempt funds into the Bank Account, and again less than this amount is spent out of the Bank Account. Therefore, it is the Trustee's contention that under the LIBR the $2,800.00 inures to non-exempt funds leaving a total of $14,228.77 of non-exempt funds in the Bank Account, which as of April 16, 2021, has a balance of $23,165.64;

- After April 16, 2021, there are no more non-exempt funds deposited into the Bank Account prior to filing, but for $77.85. Therefore, it is the Trustee's contention that under the LIBR the $77.85 inures to non-exempt funds leaving a total of $14,306.62 of non-exempt funds in the Bank Account at the time of filing.

Therefore, the amount that the Trustee contends is non-exempt and property of the estate to be turned over to the Trustee pursuant to Sections 541 and 542 of the Code, at the very least, is $14,306.62.

## IV. <u>CONCLUSION</u>

The *Diaz* court recognized that, where a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation. As a result, it is the Debtors' burden to establish their right to the claimed exemptions in the Property and the Bank Account. However, the Trustee contends that he has now met his burden of proof to establish that he is entitled to the relief requested in this Motion. The Debtors' burden is simply something they will be unable to meet based on the evidence and law presented here.



As to the Property, the Court, therefore, has no alternative but to disallow the Claimed HSE on the Property, allow the Debtors a HSE in an amount no more than $170,350.00 on the Property, and allow the Trustee to sell the Property for the benefit of creditors.

As to the Bank Account, the Court, therefore, has no alternative but to disallow the Claimed Account Exemptions in $14,306.62 of the Bank Account proceeds and order turnover of this non-exempt portion to the Trustee within five (5) business days of entry of an order granting the relief requested in the Motion as to the Bank Account.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order:

1. Granting the Motion;

2. Disallowing the homestead exemption in the amount claimed by Debtors and entering an order that the Debtors' homestead exemption is limited to $170,350.00, combined for both Debtors;

3. Determining $14,306.62 in the Debtors' Bank Account are non-exempt property of the estate ("Non-exempt Funds");

4. Requiring Debtors to turnover the Non-exempt Funds to the Trustee within five (5) business days of entry of an order on this Motion; and

5. Granting such other and further relief as is just and appropriate in the circumstances.

DATED:          September 26, 2022                    Respectfully submitted,

                                                      */s/ Summer Shaw*

                                                      _____
                                                      Summer Shaw, Proposed Counsel for
                                                      Karl T. Anderson, Chapter 7 Trustee



## DECLARATION OF KARL T. ANDERSON

I, KARL T. ANDERSON, hereby declare as follows:

1.      I am the duly appointed, qualified and acting Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Robert Nathan Reicher and Suzanne P. Carter-Reicher ("Debtors").

2.      This declaration is made in support of Chapter 7 Trustee's Notice Motion For An Order Disallowing The Debtors' Claim Of Exemption In Real Property And Bank Accounts.

3.      I have personal knowledge of the matters discussed below, and if called as a witness I could and would competently testify thereto.

4.      The facts stated herein are true and correct to the best of my own knowledge, except as to such matters as may be stated upon information or belief, which I believe to be true.

5.      The instant bankruptcy case was commenced by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 29, 2021 ("Petition Date"). Shortly thereafter, I was appointed as the Chapter 7 Trustee.

6.      According to the Debtors' schedules and statement of affairs (collectively, the "Schedules" – Docket No 1), on *Schedule A/B: Property*, the Debtors scheduled their interest in the real property commonly known as 37300 Medjool Avenue, Palm Desert, California 92211 (the "Property"), which is a single family residence. The relevant pages of the Debtors' *Schedule A/B: Property* are attached hereto as **Exhibit 1** and incorporated herein by reference. The Property is scheduled as having a market value of "$430,000" with the Debtors having a current value of "$288,100.00" (i.e. Debtors are alleged to own a 67% interest in the Property). The Debtors represented that they purchased the Property with Debtor's mother, Elanor G. Reicher ("Ms. Reicher").

7.      I believe the Property is currently worth approximately $520,000.00.

8.      According to the Debtors' Schedules, on *Schedule C: The Property You Claim as Exempt*, the Debtors asserted an exemption in the Property in the amount of $456,000.00 under California Code of Civil Procedure § 704.730 (the "Claimed HSE"). The relevant pages of the Debtors' *Schedule C: The Property You Claim as Exempt*, is attached hereto as **Exhibit 2** and incorporated herein by reference.



9.    The Debtors' Schedules, on *Schedule D: Creditors That Have Claims Secured by Property,* provide that there is a reverse mortgage of $183,937.00 on the Property.  The  relevant pages of the Debtors' *Schedule D: Creditors That Have Claims Secured by Property*, is attached hereto as **Exhibit 3** and incorporated herein by reference.

10.    My investigation into the Debtors' assets and liabilities has revealed that the Debtors purchased the Property on or about November 16, 2018, for $312,000.00. A copy of the Final Closing Statement with proof of funds deposited with the Debtors' escrow company ("Property Closing Statement") provided to my proposed counsel, by Debtors through their counsel, itemizing the Debtors' purchase of the Property, as well as corresponding evidence to show where the "down payments" came from, is attached hereto as **Exhibit 4**.

11.    The Property Closing Statement shows the "buyers" deposited to escrow "down payments" totaling $169,800.00 ("Down Payment"), of which "Brent Ball or Christina Ball" ("Third Parties") deposited to escrow $40,000.00, labeled as a "Third Party Deposit." *See* Exhibit 4 at page 1.

12.    The evidence provided by Debtors to itemize the Down Payment on the Property shows that the Debtors put no less than $129,800.00 into escrow as their portion of the Down Payment on the Property (i.e. no less than 76.4% of the Down Payment). *See* Exhibit 4 at page 4 through 6.

13.    The Third Parties put down the rest of the funds of the Down Payment (i.e. $40,000.00 or 23.5% of the Down Payment) assuming they did not obtain the funds from the Debtors to put into escrow. *See* Exhibit 4 at page 7.

14.    Debtors advised me, again, through respective counsel, that the "$40,000 down payment on the home came from the debtors' daughter and son-in-law, Brent & Christina Ball. They pitched in to meet the shortfall for their parents and grandmother."[5]

---

[5] It is my position that the Debtors own, at the very least, 76.44% of the Property, and possibly 100%. However, this issue will be addressed separately and after the Court determines the allowed amount of the Debtors' HSE.

15. Debtors contended that they were entitled to the Claimed HSE because they alleged to have purchased the Property with funds from the sale of their previous residence known as 44 Baycrest Court, Newport Beach, CA 92660 ("Prior Property").

16. However, the "Final Closing Statement" itemizing the sale of the Prior Property ("Prior Property Statement") showed that Debtors only received net proceeds from the sale of the Prior Property in the amount of $49,018.06. *See* **Exhibit 5** for a copy of the Prior Property Statement provided to me by Debtors through our respective counsel.

17. The Prior Property Statement also shows that the Debtors owed unpaid late interest for June through September 2018 totaling almost $13,000.00 and late fees of approximately $247.00, owing to their then first deed of trust holder ("1st DOT"). *See* Exhibit 5 at page 1.

18. In addition to being behind on the 1st DOT, it appears the Debtors were required to pay collection debt of some kind in the amount of $4,000.00. *See* Exhibit 5 at line item for payment to "Southwest Collection Services, Inc.."

19. Additionally, Debtors appeared to have had other financial issues, in addition to the arrears to the 1st DOT, at the time they sold their Prior Property and purchased the Property.

20. Debtors' Schedule D lists a judgment lien owing by Debtors in approximately $10,000.00 ("Judgment Lien"), as listed in Debtors' Schedule D.

21. Additionally, Schedule E/F: Creditors That Have Unsecured Claims, lists unpaid income taxes of approximately $13,000.00 for tax years 2013 and 2014. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the relevant pages of the Debtors' voluntary petition and Schedule E/F: Creditors That Have Unsecured Claims, a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated herein by reference. *See* Exhibit 6 at pages 9 and 10.

22. Debtors' Schedule E/F also lists a debt owing to Wells Fargo Bank in the amount of approximately $6,700.00 relating to a "Voluntary Surrender" on an "Automobile Loan" that was "Last Active 11/2018." See Exhibit 3 at page 13.

23. Debtors, through their counsel, in a letter to me/my proposed counsel, dated August 18, 2022, alleged that Ms. Reicher "contributed the down payment of the home and the ongoing



payments of the home." However, as discussed above, there is no evidence Ms. Reicher contributed any of the Down Payment and no "ongoing payments of the home" appear to be required as Debtors have asserted that there is only a Reverse Mortgage owing against the Property.

24.    Additionally, Debtors have alleged that they pay 100% of the expenses associated with the Property as stated in the Debtors' *Schedule J: Your Expenses*. The relevant pages of the Debtors' *Schedule J: Your Expenses*, is attached hereto as **Exhibit 7** and incorporated herein by reference. *See* Exhibit 7 at lines 4 through 6.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 5th day of October, 2022.

/s Karl T. Anderson[6]

_____

KARL T. ANDERSON

---

[6] I was unavailable to sign the attached document but, in order to obtain a hearing date in October, rather than after the dates when the Court is "dark" in November, Trustee asked counsel to file the Motion and declaration as is filed here, with his electronic signature, and file his signature pages when he returns to the office.



## __DECLARATION OF SUMMER SHAW__

I, Summer Shaw, declare:

1.      I am an attorney duly admitted to practice in the State of California and to the Bar of this Court and I am the managing attorney of SHAW & HANOVER, PC, whose business address is 42-600 Cook Street, Suite 210, Palm Desert, California 92211, telephone number (760) 610-0000, facsimile (760) 687-2800 and who is responsible for representation of the Trustee in this matter.

2.      The following is within my personal knowledge, and if called as a witness, I could and would competently testify thereto.

3.      The Debtors' counsel provided the Trustee and my office, bank statements for the Bank Account covering September 18, 2019 through the Petition Date ("Bank Account Statements"). Based on my review of the Bank Account Statements, the following is what I found:

a.      As of September 18, 2019, the Bank Account had $1,885.93, funds which are not traced to any exempt origination;

b.      In the September-October 2019 statement, the Debtors deposited $1,556.03 of non-exempt funds in the Bank Account and SSI of $2,127.00, and spent down less than deposits into the Bank Account, leaving a balance of $3,040.41;

c.      In the October-November 2019 statement, the Debtors deposited $2,947.56 of non-exempt funds into the Bank Account and $2,127.00 of SSI funds, and spent down less than deposits into the Bank Account, leaving a balance of $3,035.22;

d.      Again, in the November- December 2019 statement, the Debtors deposited $2,550.04 of non-exempt funds into the Bank Account and $2,127.00 of SSI funds, and spent down less than deposits into the Bank Account, leaving a balance of $3,099.26;

e.      This similar pattern continues[7] over the next several months, at which point, on March 18, 2020, the account begins with a balance of $3,641.42. The March-April 2020 statement shows that SSI funds of $2,154.00 were deposited into the Bank

---

[7] The December-January 2020 bank statement ends with a balance of $3,127.61, the January-February 2020 bank statement ends with a balance of $3,284.44, and the February-March 2020 bank statement ends with a balance of $3,641.42.



Account and $2,506.32 of non-exempt funds were deposited in the Bank Account with less spent down less than deposits into the Bank Account;

f.   The April-May 2020 statement shows that SSI funds of $2,154.00 were deposited into the Bank Account and $4,035.00 of non-exempt funds were deposited in the Bank Account with slightly more spent down, than deposits into the Bank Account, leaving a balance of $5,851.42;

g.   In the May-June 2020 Statement only $50 of non-exempt funds[8] goes into the account and less than the deposits are spent down from the Bank Account, so the account contains $5,901.42 of non-exempt funds with a $9,443.56 balance in the account at the end of the month;

h.   In the June-July 2020 statement, $2,100.00 more of non-exempt funds go into the account, along with $8,154.00 of exempt funds (SSI and UEI), and less than this amount is spent out of the Bank Account leaving a balance in the Bank Account of $13,508.95;

i.   Again, in the July-August 2020 statement, another $1,863.50 of non-exempt funds are deposited into the account, the rest of the deposits are exempt funds, and again less than this amount goes out of the Bank;

j.   The September, October & November 2020 statements show only another $363.85 of non-exempt funds are deposited into the account, and again less than the deposits for all of these months are spent out of the Bank Account and leaving a total balance of $14,839.21 in the account;

k.   No non-exempt funds are deposited into the Bank Account after November 18, 2020, and the withdrawals never exceed the amount deposited into the account through January 16, 2021, and the account balance for the Bank Account is $15,979.36;

l.   In the January-February 2021 statement, Debtors deposit $1,200.00 of non-exempt

---

[8] The Trustee has confirmed that the transfers that appear in this month's statement are unemployment income funds that were transferred by the Debtor from his California Unemployment BofA account, to the Bank Account.


Shaw & Hanover

funds into the Bank Account, and again less than this amount is spent out of the Bank Account;

    m.   No non-exempt funds are deposited into the Bank Account during the time covering the February-March 2021 statement and the withdrawals never exceed the amount deposited into the account, so by March 18, 2021, the account balance for the Bank Account is $19,388.47;

    n.   In the March-April 2021 statement, Debtors deposit $2,800.00 of non-exempt funds into the Bank Account, and again less than this amount is spent out of the Bank Account and as of April 16, 2021, it has a balance of $23,165.64;

    o.   After April 16, 2021, there are no more non-exempt funds deposited into the Bank Account prior to filing, but for $77.85.

4.    Debtors' counsel, Ms. Doling, advised me, in an email to myself/the Trustee, dated June 29, 2022, that the "$40,000 down payment on the home came from the debtors' daughter and son-in-law, Brent & Christina Ball. They pitched in to meet the shortfall for their parents and grandmother."

5.    Ms. Doling, then asserted on behalf of the Debtors, in a letter to myself/the Trustee, dated August 18, 2022 ("August 18th Letter"), that Ms. Reicher "…contributed the down payment of the home and the ongoing payments of the home." However, as discussed above, there is no evidence Ms. Reicher contributed any of the Down Payment and no "ongoing payments of the home" appear to be required as Debtors have asserted that there is only a Reverse Mortgage owing against the Property.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed this 26th date of September, 2022.

*/s/ Summer Shaw*

_____

SUMMER SHAW



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **42-600 Cook Street, Suite 210, Palm Desert, CA 92211**

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR AN ORDER: 1. DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN REAL PROPERTY; 2. DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN A BANK ACCOUNT; AND 3. TURNOVER OF NON-EXEMPT FUNDS IN THE BANK ACCOUNT TO THE TRUSTEE; WITH MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KARL ANDERSON AND SUMMER SHAW IN  SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ____**10/05/2022**_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Karl T Anderson (TR)    vinland@live.com, kanderson@ecf.axosfs.com**
- **Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com**
- **Christina J Khil    christinao@mclaw.org, CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com**
- **United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov**

☐   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __**10/05/2022**__ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **HONORABLE JUDGE'S COPY**
> **Honorable Judge Mark D. Houle**
> **United States Bankruptcy Court**
> **3420 Twelfth Street, Suite 325**
> **Riverside, CA  92501-3819**

☒  Service information continued on **attached pages 23-24**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____**10/05/2022**_____ | Summer Shaw_____ | _____/s/ Summer Shaw_____ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

American Express Bank, FSB*
Attn: Kenneth Chenault, CEO
4315 S. 2700 West
Salt Lake City, UT 84184-0001

## 2. Served by US Mail Cont.:

Amex
P.o. Box 981537
El Paso, TX 79998-1537

Bank of America
Po Box 982238
El Paso, TX 79998-2238

Bank of America, N.A.
Attn:  Brian T. Moynihan, CEO
150 North College Street
NC1-028-17-06
Charlotte, NC 28255-0001

Bank of America, N.A.
Attn:  Brian T. Moynihan, CEO
Legal Order Processing
PO Box 15047
Wilmington, DE 19850-5047

Bank of America, N.A.
Attn:  Brian T. Moynihan, CEO
PO Box 5170
Attn: Unit CA6-919-01-41
Simi Valley, CA 93062-5170

Bank of America, N.A.
c/o C T Corporation System
Agent for Service of Process
818 West Seventh Street, Suite 930
Los Angeles, CA 90017-3476

Bank of America, N.A.*
ATTN:  Brian T. Moynihan, CEO
100 North Tryon Street
Charlotte, NC 28202-4000

Barclays Bank Delaware
P.o. Box 8803
Wilmington, DE 19899-8803

Barclays Bank Delaware*
Attn: President or CEO
125 South West Street
Wilmington, DE 19801-5014

Capital Management Services, LP
698 1/2 South Ogden Street
Buffalo, NY 14206-2317

Capital One
Po Box 31293
Salt Lake City, UT 84131-0293

Capital One Bank (USA), N.A.*
ATTN:  Richard D. Fairbank, CEO
4851 Cox Road
Glen Allen, VA 23060-6293

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Citibank
Po Box 6217
Sioux Falls, SD 57117-6217

Citibank, N.A.*
Attn: Gene McQuade, CEO
701 East 60th Street, North
Sioux Falls, SD 57104-0432

Civil Process Clerk
Office of the U.S. Attorney
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, CA 90012-3308

Costco Anywhere Visa Card
Po Box 6190
Sioux Falls, SD 57117-6190

Department of Education*
Office of General Counsel
400 Maryland Ave. SW Room 6E353
Washington, DC 20202-2110

Discover Bank*
Attn: Roger C. Hochschild, CEO
502 East Market Street
Greenwood, DE 19950-9700

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

ECMC
PO Box 16408
Saint Paul, MN 55116-0408

Education Department
Office of General Counsel
400 Maryland Ave. SW Room 6E353
Washington, DC 20202-2110

Employment Development Department*
Bankruptcy Group MIC92E
P.O. Box 826880
Sacramento, CA 94280-0001

(p)FIRST NATIONAL BANK OF OMAHA
1620 DODGE ST
STOP CODE 3113
OMAHA NE 68102-1593

(p)FIRSTMARK SERVICES
121 S 13TH STREET STE 201
LINCOLN NE 68508-1911

Hunt & Henriques
Attorneys at Law
7017 Realm Drive
San Jose, CA 95119-1321

Internal Revenue Service*
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
c/o C T Corporation System
Agent for Service of Process
818 West Seventh Street, 2nd Floor
Los Angeles, CA 90017-3407

Matthew Jennings*
Treasurer-Tax Collector
4080 Lemon Street, 1st Floor
PO Box 12005
Riverside, CA 92502-2205

Mufg Union Bank N.a.
Po Box 85643
San Diego, CA 92186-5643

Navient
Po Box 9500
Wilkes Barre, PA 18773-9500

Resurgent Capital Services
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603-0497

Resurgent Capital Services
C/o Resurgent Capital Services
Greenville, SC 29602

Reverse Mortgage Funding
PO Box 40724
Lansing, MI 48901-7924

State of California*
Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA 95812-2952

Sun City Palm Desert Community Asc.
38180 Del Webb Boulevard
Palm Desert, CA 92211-1256

The Dunning Law Firm
9619 Chesapeake Drive
San Diego, CA 92123-1368

Union Bank, N.A.
c/o Registered Agent Solutions, Inc
Agent for Service of Process
1220 S Street, Suite 150
Sacramento, CA 95811-7147

Union Bank, N.A.*
Masashi Oka, CEO
400 California Street
San Francisco, CA 94104-1382

United States Dept. of
Education Litigation Support
400 Maryland Avenue, SW
Washington, DC 20202-0001

Wells Fargo Bank, N.A.
c/o CSC - Lawyers Inc. Service
Agent for Service of Process
251 Little Falls Drive
Wilmington, DE 19808-1674

Wells Fargo Bank, N.A.*
Attn: Charles Scharf, CEO
101 North Phillips Avenue
Sioux Falls, SD 57104-6714

Wells Fargo Dealer Services
Po Box 71092
Charlotte, NC 28272-1092

Joint Debtor-

Suzanne P Carter-Reicher
37300 Medjool Avenue
Palm Desert, CA 92211-1393

Debtor-

Robert Nathan Reicher
37300 Medjool Avenue
Palm Desert, CA 92211-1393