1  Jenny L. Doling, Esq. (SBN 207033)
**J. DOLING LAW, PC**
2  36-915 Cook Street, Suite 101
Palm Desert, CA  92211
3  Phone: (760) 884-4444
Fax: (760) 341-3022
4  jd@jdl.law

5  *Attorney for Debtors*
Robert Nathan Reicher, and
6  Suzanne P Carter-Reicher

7

8  ## UNITED STATES BANKRUPTCY COURT

9  ## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

10  | | |
|---|---|
| In re: | Case No.: 6:21-bk-15157-MH |
| | |
| ROBERT NATHAN REICHER, and SUZANNE P CARTER-REICHER | Chapter 7 |
| | **DEBTORS' OPPOSITION TO CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR AN ORDER:** |
| | 1. **DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN REAL PROPERTY;** |
| | 2. **DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN A BANK ACCOUNT; AND** |
| | 3. **TURNOVER OF NON-EXEMPT FUNDS IN THE BANK ACCOUNT TO THE TRUSTEE;** [Docket No. 33] |
| Debtors. | |
| | Hearing Set For: |
| | Date:   October 26, 2022 |
| | Time:   11:00 a.m. |
| | Ctrm:   301 |
| | Place:  3420 Twelfth Street |
| | Riverside, CA 92501 |

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE; KARL T. ANDERSON, CHAPTER 7 TRUSTEE; SHAW & HANOVER, PC, ATTORNEY FOR CHAPTER 7 TRUSTEE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**



1    Debtors, Robert Nathan Reicher and Suzanne P Carter-Reicher ("Debtors"), submit this

2    Opposition to Karl Anderson, Chapter 7 Trustee's ("Trustee") Notice of Motion and Motion for an

3    Order: 1. Disallowing the Debtors' Claim of Exemption In Real Property; 2. Disallowing the

4    Debtors' Claim of Exemption in A Bank Account; and 3. Turnover of Non-Exempt Funds in the

5    Bank Account to the Trustee ("Motion") filed on October 6, 2022 as Docket Number 33.

6    This Opposition is based on this Memorandum of Points and Authorities, the facts of this

7    case, the declarations, exhibits, petition, schedules, and other documents filed in this case.

8    Date: October 7, 2022                              **J. DOLING LAW, PC**

9                                                       */s/ Jenny L. Doling*

                                    By:    _____

10                                                      Jenny L. Doling
                                                        Attorneys for Debtors
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J. DOLING LAW
PC

4854-9137-2344, v. 2

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.      BACKGROUND**

**A.  Procedural History**

Debtors, Mr. & Mrs. Reicher, filed this chapter 7 petition on September 29, 2021, known as Case No. 6:21-bk-15157-MH.  Debtors' first 341(a) Meeting of Creditors hearing was held on November 2, 2021 at 9:00 a.m.  Debtors appeared with their attorney of record.  The Trustee has continued the meetings 11 times.   The Parties have been in communication throughout this time and have exchanged extensive documents.  Debtors rejected the Trustee's position and advised they intended to move to compel abandonment.  In response, the Trustee advised he intended to file an objection to Debtors' homestead exemption.  Debtors advised they would wait to file their motion to compel until the objection was filed, as practically, it would be unlikely a ruling would be granted on Debtors' motion to compel abandonment before the court ruled on the objection.  The trustee agreed and stated he would abandon the property if the court overruled his objection.  The trustee's objection was filed on October 5, 2022 and set for hearing on October 26, 2022.  *See Debtor's Declaration.*

**B.  Factual History**

Mr. & Mrs. Reicher are 78 and 76 years old, respectively.  They acquired their residence in Orange County in or about 2006.  Due to financial struggles and the high cost of living in Orange County they knew they had to move to a more affordable city for their retirement years.  At the same time, Debtor's mother had reached the point where it was no longer safe, economical, or practical for her to live alone.  Debtors and Debtor's mother pooled their resources to purchase a home together in the senior community of Sun City Palm Desert, where Debtor's mother could reside with Debtors.  Debtors had poor credit and could not qualify for financing.  The Debtor's mother had good credit but lacked funds for a down payment.  Debtors and Debtor's mother agreed to jointly purchase their home in the senior community of Sun City, Palm Desert.  This provided a more affordable option for their family in their retirement years, while living on fixed incomes.



Debtors and Debtor's mother jointly purchased the Sun City Residence ("Residence") on or about November 16, 2018, for $312,000.  Debtors used the funds from the sale of their Orange County home as a down payment for the Sun City residence.  This was insufficient to cover the needed down payment, as such Debtors' daughter and her husband contributed $40,000 to the purchase of the home for her parents and grandmother.  A reverse mortgage deed of trust in Debtors' and Debtor's mother's name was recorded against the property, see **Exhibit A**, with a beginning balance of $161,304, see **Exhibit D**.  The current mortgage balance is $194,250.48.  See **Exhibit B**.  Title to the property was not taken as tenants in common, but rather joint tenancy to ensure the remaining owners would receive and remain in the property if a joint tenant passed away.

Debtors pay the property taxes, insurance, and HOA dues associated with the residence.  Debtor's mother uses her Social Security benefits for the general household expenses, as needed.  Debtors' sole income leading up to the bankruptcy filing was Social Security, unemployment, and the occasional consulting jobs, for which Debtor received 1099 income.  Debtors disclosed the funds in their bank accounts on their schedules.  *See Debtor's Declaration.*  Debtors contend their Sun City Residence and their bank accounts are exempt and must be abandoned.

## II.    LEGAL ARGUMENT RE:  HOMESTEAD EXEMPTION

### A.  11 U.S.C. § 522(p) Does Not Render Debtors' Residence Unexempt.

It is undisputed Debtors acquired the Sun City residence within 1,215 days of filing their petition which triggers the 11 U.S.C § 522(m) and (p) analysis.  However, respectfully, the Trustee's analysis is misguided, incomplete, and fails to meet his burden to justify sustaining an objection to Debtors' homestead exemption.  As will be shown below, the objection must be overruled.

The Trustee argues "Debtors' claim of homestead exemption is limited to $170,350 because the Debtors used non-exempt funds to purchase the property." *See Objection p. 9, l.14-15.*  However, this is simply wrong.  The statute does not limit the homestead exemption *because* a debtor uses funds from the sale of a home to purchase a new home, in fact it specifically provides for an increase to the cap for debtors who *do use funds* from the sale of a prior residence to purchase a replacement residence within the same state.



4854-9137-2344, v. 2

The provisions of § 522, excluding the application of the federal exemption scheme, apply whether a state has opted out of the federal exemption scheme or not because § 522 does not solely set forth the federal exemption scheme.  It provides the framework Congress enacted for state exemption laws to operate within the U.S. Bankruptcy Code.  A state's exemption scheme does not affect the 522(m) and (p) analysis, as it applies the same to all states.  § 522(p) is a limitation or a cap on a state homestead exemption.

§ 522(p) imposes a limitation or cap on a homestead exemption where the home was acquired within 1,215 days of the filing of a bankruptcy petition.  The Trustee's attempt to muddy the waters by calling the § 522(p) cap a "1215 penalty period" is a red herring.  Congress recognized there were legitimate circumstances where a debtor may need to sell a homesteaded property and purchase a replacement homestead.  Those circumstances may include downsizing to a more affordable home, moving to a more affordable community, moving an elderly person from their home to an assisted living facility, replacing a home due to a natural disaster or other loss, moving for better employment opportunities, moving for education or trade school opportunities, or moving after a divorce.  There are an endless number of reasons one would legitimately sell their home and purchase another.  The intent behind § 522(p) was to prevent forum shopping by an unscrupulous debtor who, prior to its enactment, could cash out significant equity in their residence and shelter it in a state with more favorable or unlimited homestead protections to avoid paying creditors.  However, § 522(p) provides an exception for the honest but unfortunate debtor.

§ 522(p) states:

"(p)
(1)Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, **a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000**[1] 1 in value in—

(A)    **real or personal property that the debtor or a dependent of the debtor uses as a residence;**

---

[1] Adjusted to by statute to $170,350 in this case and hereinafter used.

4854-9137-2344, v. 2

(B)  a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(C)  a burial plot for the debtor or a dependent of the debtor; or

(D)  **real or personal property that the debtor or dependent of the debtor claims as a homestead**.

(2)
(A)  The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer.

(B)  For purposes of paragraph (1), **any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State."** (Emphasis added)

The § 522(p)(2) exception applies in this case.  The trustee's analysis was incomplete because it failed to address the § 522(p)(2) provision.

    If we breakdown § 522(p)(1) and (2), we see it instructs that:

1.  A debtor may not exempt an interest in property that was acquired during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $170,350…

    - **Here, Debtors acquired their interest within the 1215-day period.**  *See Exhibit C Copy of Deed.*

2.  **Except** as provided in paragraph (2) of this subsection…

3.  "Any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State."



- **The amount from the sale of Debtors' prior California residence transferred to the Sun City residence was $49,018.** *See **Exhibit D** Copy of Escrow Closing Statement.*

The statute instructs that § 522(p)(1) will cap a debtor's state homestead exemption at $170,350, ***not including*** the $49,018 transferred from Debtor's prior residence when the property was acquired during the 1215-day period.  Therefore, we know Debtor's minimum exemption in the Sun City residence is $219,368 ($170,350 + $49,018 – not to exceed the state's $456,000 exemption for Riverside County).  Had Debtors' prior California residence netted $456,000 upon its sale and Debtors used the $456,000 to purchase another Residence in California, the § 522(p)(2) exception would eliminate the § 522(p)(1) cap, and no party, neither the creditors nor the debtors would be worse or better off. That is the point of this statute – to keep an *even playing field* for all parties, not to punish debtors.  This is not a penalty statute.

As demonstrated in the table below, we need not go further in our analysis, even if we use the trustee's higher fair market value of $520,000[2], to see the Sun City Residence is exempt and must be abandoned:

| | |
|---|---|
| Fair Market Value: | **$520,000** |
| Costs of Sale 6% | (red)($32,100) |
| Mortgage Balance | ($194,000) |
| Mother's Undivided Equal Share | ($98,267) |
| Debtor's Equity | **$196,522** |
| Less Debtor's Capped Exemption | ($170,350) |
| Less Debtor's Rollover from Prior CA Residence § 522 (p)(2) | ($49,0189) |
| **Remaining Non-Exempt Equity** | **($22,846)** |

There is no remaining equity for the bankruptcy estate.  However, the analysis does not end here.  As explained below, the trustee's legal analysis is again, incomplete.

### B.  11 U.S.C. § 522(m) Provides Each Debtor in a Joint Case with Their Own § 522(p) Cap.

The Trustee's Objection dismisses and misconstrues a very important and mandatory statutory provision in 11 U.S.C. § 522, that being § 522(m).  In Footnote 2 of his Objection, the Trustee misconstrues the statute implying that it's Debtors' position that each Debtor is entitled to a

---

[2] Debtors dispute Trustee's value.  See Debtors' Declaration and Debtors' Brokers' Declaration and BPO.  Current value: $440,000.  The trustee offered no admissible evidence to support his $520,000 value.


J. DOLING LAW PC

4854-9137-2344, v. 2

homestead exemption of $170,350.  Neither the Debtors, nor the U.S. Bankruptcy Code take this position.

11 U.S.C. § 522(m) states:

> "(m) Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case."

§ 522(m) does not distinguish between community property states and separate property states, like § 522(p) it applies to all cases the same when this statute is triggered.  § 522(m) is clear that each debtor in a joint case, as we have here, is entitled to her own exemption **cap**.  Debtors are not attempting to double their state law exemption.  Debtors are simply applying the $170,350 cap to each Debtor, as the plain language of § 522(m) requires.

Several courts, including Washington, a community property state, have ruled on the § 522(m) and (p) statutes holding that:

> "The Debtors acquired the Real property withing 1215 days of filing their petition and the $170,350 exemption cap imposed by § 522(p)(1) applies.  The Debtors filed a joint case and own the Real Property as community property.  Section 522(m) entitles the Debtors to double the § 522(p)(1) exemption cap to $340,700.  The Trustee concedes that an exemption cap of $340,700 leaves no value to which the Trustee of the unsecured creditors might stake a claim.  Accordingly, the Trustee's objections to the Debtors' claim of exemption are overruled and the Debtor's motion to compel the Trustee to abandon the Real Property is granted." _In re Davis,_ No. 22-40279-MJH, 2022 Banrk. LEXIS 1857, at *8-9 (Bankr. W.D. Wash. July 6, 2022).

Here the Trustee's § 522(m) argument makes no sense.  The Trustee appears to confuse the plain language of the statute.  Nowhere in the § 522 statute does the statute state § 522(m) is inapplicable to § 522(p) or state homestead exemptions.  In fact, if it was inapplicable to state homestead exemptions as the trustee contends, the § 522(m) language would be rendered meaningless as the federal homestead exemption is only $27,900. _11 U.S.C. § 522(d)(1)._  Congress would have no need to impose a cap provision or address how the § 522(p) cap is applied to joint debtors under 522(m) as the federal exemption is nearly $150,000 less than the cap.  The only relevance § 522(m) and (p) have is when they **_are_** applied to state exemption that exceed the federal § 522(p) caps.



We know the § 522(p) cap applies here. We know this is a joint case. Therefore, § 522(m) also applies and provides that each debtor is entitled to her own cap, resulting in a **total cap** of $340,700. Here, Debtors have claimed one homestead exemption in their residence. They have not each claimed a separate homestead exemption. It is important not to confuse the plain language of the statutes.

Moreover, the Trustee argues that Debtors would unjustly benefit if the 522(m) language is applied to each Debtor because it would double the homestead exemption, and in the case of joint debtors in California, before the enactment of California's new homestead exemption on January 1, 2021, they would have a homestead exemption of $250,000, and that would exceed the maximum California homestead exemption of $175,000. *See Objection p. 10, fn.2.* Again, this is a misunderstanding of the § 522 statutory language. Doubling the homestead limitation or cap is simply that, doubling the **cap**. Nothing in the statute expands the state exemption. With 50 states, Congress could not effectively address what each state's homestead exemption is. What Congress did was provide a limitation on the homestead exemption, *if that exemption exceeded the § 522(p) cap.* Therefore, if the 522(p) cap exceeds the state homestead exemption, debtors would only get up to the homestead exemption. As argued above, the creditors are no worse off and the debtors are no better off. The § 522(m) and (p) provisions are not punitive. The statutory provisions simply *evens the playing field* by eliminating forum shopping advantages.

Therefore, now that we have completed the required analysis of § 522(m) and (p), we can see there clearly is no non-exempt equity in Debtors' Sun City Residence:

| | |
|---|---:|
| Fair Market Value: | **$520,000** |
| Costs of Sale 6% | $32,100 |
| Mortgage Balance | $194,000 |
| Mother's Undivided Equal Share | $98,267 |
| Debtors' Equity | **$196,522** |
| Less Debtor's Cap | $170,350 |
| Less Joint Debtor's Cap | $170,350 |
| Less Debtor's Rollover from Prior CA Residence § 522 (p)(2) | $49,018 |
| **Remaining Non-Exempt Equity** | -$193,196 |

Pursuant to the analysis under § 522(m) and (p) and the California homestead exemption at $456,000, Debtors' homestead exemption is $389,718 ($170,350 + $170,350 + $49,018). There is



no non-exempt equity available.  The Trustee's objection must be overruled, and the property abandoned.

**C.  <u>The Title Presumption Upholds the Debtors' Property Taken in Joint Tenancy</u>**

In the Trustee's Statement of Relevant Facts, it appears the trustee is treating Debtor's mother's ownership share of the Residence as a percentage-based share or an unequal tenancy in common share solely based on the percentage of the down payment paid by Debtors.  *See Objection p.5-6.* However, the trustee offers no legal basis for that analysis.  The Trustee did not develop a legal argument on this point.  Either way the argument against respecting the Joint Tenancy interest of Debtor's mother is irrelevant given the § 522(m) and (p) analysis above, as even if Debtor's Mother's interest was completely disregarded, there would still be no non-exempt equity.  But to be clear, title to Debtors' residence is held as joint tenants among Debtors and Debtor's mother.  California law is well-settled that joint tenancy entitles each owner to an equal undivided share with right of survivorship.  The share of ownership in property held as joint tenants is not determined by the percentage of down payment contributed to the property.  This is not a case concerning a community property interest where the form of title presumptions may not prevail.  This is a case involving a third-party owner.  The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof.  Cal. Evid. Code § 662 states the owner of legal title to property is presumed to be the owner of the full beneficial interest.  Any allegations that legal title does not represent the beneficial interest have historically been disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.  Public policy strongly favors the stability of titles to property.  The trustee offers no valid legal basis to rebut the title presumption and arbitrarily ignore or set-aside Debtor's Mother's undivided equal share of the joint tenancy.  Any objection to Debtors' homestead exemption on that basis must be overruled.  The Mother's full 1/3 share must be respected in a liquidation analysis.

///

///



III.    **LEGAL ARGUMENT RE: DEBTORS' BANK ACCOUNT EXEMPTION.**

In an interesting attempt to disregard the exempt status of Debtors' bank accounts, the Trustee argues a tracing theory to trace funds in Debtors' bank accounts going back two years prior to the filing of this case (October 2019 to September 2021) relying on the "lowest intermediate balance rule" from a non-binding court opinion. *See Objection p.10, l.8-19. Salameh v. Tarsadia Hotel, 2015 U.S. Dist. LEXIS 140008.* The Trustee argues "the exempt funds may not exceed the lowest balance occurring at any time between the deposit of exempt funds and the time of levy, and new deposits do not replenish the original exempt funds although the new deposits may themselves be exempt." *See Objection p. 10, l. 14-19. Franco, 2015 WL 1383525, at \*4n.4; Republic Supply Co. v. Richfield Oil Co., 79 F.2d 375, 379-80 (9th Cir. 1935).*

In the cases cited by the trustee, the debtor used the wage exemption that statutorily only looked to the 30-day period prior to the date of levy. In *Salmeh,* the court stated: "Under section 704.070, debtors can claim exemptions for '[p]aid earnings that can be traced into deposit accounts . . . .' Cal. Civ. Proc. Code § 704.070(b). 'Paid earnings" are defined as "compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonus, or otherwise', id. § 706.011(b), and 'that were paid to the employee during the 30-day period ending on the date of the levy.' Id. § 704.070(a)(2)." *Salameh v. Tarsadia Hotel, 2015 U.S. Dist. LEXIS 140008, \*10-11.* The Court did not use a two-year look back period as the Trustee attempts to do here with no legal authority. This is an important distinction because the court specifically noted that the exemption applied in that case was a "necessary to support" type of exemption, and those funds not expended for support that remained in the account lose the exempt status, unlike Debtors' "non-reasonable and necessary support" type exemption. Debtors had no earnings during the six-months prior to the petition.

Further, unlike the potential to lose the exempt status in the funds described above, Debtors' Social Security and Unemployment funds *never* lose their exempt status, and are not subject to any limitations or reasonable and necessary analysis. No creditor, nor a bankruptcy trustee could seize those exempt funds or argue Debtors were required to use those funds before any non-exempt funds

**J. DOLING LAW**
PC

4854-9137-2344, v. 2

1   to support debtors.  The Social Security and Unemployment exclusions and exemptions are not

2   "reasonable and necessary" type exclusions or exemptions.  They are not subject to seizure, period.

3       We need not go through the lengthy and flawed analysis of Debtors' bank accounts proffered

4   by the Trustee.  The trustee offers no authority to go back two-years prior to the bankruptcy case,

5   but if we did, we reach a simple common-sense conclusion that Debtors had no non-exempt funds

6   at the time of filing.  By law, we remove all exempt Social Security and Unemployment funds from

7   the equation as those funds are not subject to the jurisdiction of the bankruptcy courts or seizure by

8   creditors.  *See 26 U.S.C. 407.*  That leaves only $17,275.50 of non-exempt (primarily 1099 income)

9   during that 24-month period prior to filing.  *See Debtor's Declaration.*  Debtors' Schedule J monthly

10  budget is $4,394.  *See* **Exhibit E**.  The non-exempt 1099 income Debtor earned was wholly

11  insufficient to pay Debtors' regular reasonable and necessary living expenses for even 4 months of

12  the 24-month period prior to filing.  In fact, the last date the trustee alleges non-exempt funds were

13  deposited into Debtors' accounts was March-April 2021 and that deposit was only $2,800. There is

14  no conceivable argument that non-exempt funds remained in the accounts when Debtor monthly

15  expenses during the same 24-month period exceeded $105,000 ($4,394/mo. x 24-months).  Nor,

16  could the $2,800 received within the 6 months before filing cover a single month of Debtors' living

17  expenses.

18      Furthermore, both *Salameh and Franco* dealt with levies and short periods of time, not a

19  bankruptcy where the commingled funds were unconditionally exempt Social Security, exempt

20  unemployment, and minimal non-exempt 1099 income.   The cases also state the "lowest

21  intermediate balance principle" is not the only method to be employed when tracing and if another

22  method would better serve the interest of justice and equity, it may be used.  The court must apply

23  the "lowest intermediate balance principle" to determine the amount of exempt funds in a deposit

24  account, unless the parties demonstrate that another method of tracing "would better serve the

25  interests of justice and equity under the circumstances of the case."*See Cal. Civ. Proc. Code*

26  *§703.080(c). Salameh v. Tarsadia Hotel, 2015 U.S. Dist. LEXIS 140008, *11-12.* We need not look

27  to another method when the only source of funds available to levy or seizure by the trustee were (1)

28

J. DOLING LAW
PC

4854-9137-2344, v. 2

depleted 6-months before the case was ever filed and (2) clearly needed and spent on living expenses, thereby satisfying any "necessary to support" principle the courts relied on in *Salameh and Franco*.

Another way to characterize the Trustee's argument is that the Trustee is attempting to circumvent the powerful protections of the Social Security Act, 42 U.S.C § 407, by forcing Debtors to use exempt Social Security funds before non-exempt 1099 income. There is no authority to do so. The Trustee lacks any credible evidence that non-exempt 1099 funds remained in the bank accounts after Debtors' reasonable and necessary expenses had been paid for the same 24-month period. In fact, the Trustee's analysis lacks any mention of Debtors' reasonable monthly living expenses despite the *Salameh* and *Franco* Courts specifically addressing the reasonable and necessary support inquiry needed. One cannot argue the benefits of a principle and ignore the burdens of that principle – the *Salameh* and *Franco* Court certainly did not. Here, the Trustee's objection must be overruled.

## IV.    **CONCLUSION**

Debtors are 78 and 76 years old. They, like many in their age demographic, have been hindered with fixed incomes and crippling inflation. They accumulated Social Security benefits are the only savings Debtors have for the rest of their retirement years. Public policy supports the protection of the funds and Debtors' residence. Debtors respectfully request this Court enter an order overruling the Trustee's objections to Debtors' exemptions and order abandonment of these exempt assets so Debtors' case may finally close, and they be afforded the relief honest but unfortunate debtors are assured in the U.S. Bankruptcy system.

Date: October 7, 2022                                    Respectfully submitted,

                                                                **J. DOLING LAW, PC**

                                                                /s/ *Jenny L. Doling*
                                        By:    _____
                                                                Jenny L. Doling
                                                                Attorneys for Debtors



4854-9137-2344, v. 2

## <u>DECLARATION OF ROBERT NATHAN REICHER</u>

I, ROBERT NATHAN REICHER, declare that the following is true and correct to the best of my personal knowledge and if called upon to testify, I could and would competently testify to the truthfulness of all statements herein.

1. I am one of the Debtors in the bankruptcy proceeding, filed on September 29, 2021, and known as case number 6:21-bk-15157-MH.

2. I am 78 years old, and my wife is 76 years old.

3. My wife and I acquired our Orange County residence on or about 2006.

4. Due to financial struggles and the high cost of living in Orange County, we knew we had to move to a more affordable city for our retirement years.  At the same time, my mother had reached the point where it was no longer safe, economical, or practical for her to live alone.

5. My wife, mother and I pooled our resources to purchase a home together in the senior community of Sun City Palm Desert, where my mother could live with my wife and me.

6. My wife and I had poor credit and could not qualify for financing.  My mother had good credit but lacked funds for a down payment.  The three of us agreed to jointly purchase our home in the senior community of Sun City Palm Desert.

7. On November 16, 2018, we purchased our Sun City Residence ("Residence") for $312,000. We used the funds from the sale of our Orange County home as a down payment for the Sun City residence.  Our daughter also contributed $40,000 to the purchase of our home.

8. A reverse mortgage deed of trust was recorded in our names on November 16, 2018, with a beginning balance of $468,000.

9. Attached as **Exhibit A** is a true and correct copy of the deed of trust recorded.

10. The current mortgage balance is $194,250.48.

11. Attached as **Exhibit B** is a true and correct copy of the current reverse mortgage statement.



12. Title to the property was not taken as tenants in common, but rather joint tenancy to ensure the remaining owners would receive and remain in the property if a joint tenant passed away.

13. Attached as **Exhibit C** is a true and correct copy of the grant deed recorded.

14. Attached as **Exhibit D** is a true and correct copy of the final escrow closing statement.

15. My wife and I pay the property taxes, insurance, and HOA dues associated with our residence. My mother uses her social security benefits for the general household expenses, as needed.

16. Attached as **Exhibit E** is a true and correct copy of our filed expense Schedule J.

17. Our sole income leading up to the bankruptcy filing was Social Security, unemployment, and occasional consulting jobs (1099 income).

18. On November 2, 2021, my wife and I appeared for our 341(a) Meeting of Creditors along with our attorney of record. The Trustee has continued the meetings 11 times. The next continued meeting of creditors is scheduled for October 18, 2022 at 1:30 p.m. However, our appearances have been waived.

19. We disagree with the Chapter 7 Trustee's value of $520,000 and because there was no factual basis for that number provided in Trustee's moving papers, we obtained a Broker's Price Opinion ("BPO"). The Broker valued the property at $440,000.

20. Attached as **Exhibit F** is a true and correct copy of the BPO.

21. We respectfully request the Court enter an order denying the Chapter 7 Trustee's Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and this supplemental declaration is executed on this 12th day of October 2022, at Palm Desert, California.

ROBERT NATHAN REICHER
Debtor

J. DOLING LAW
4854-9137-2344, v. 2

### <u>DECLARATION OF JENNY L. DOLING</u>

I, JENNY L. DOLING, declare, and state:

1.  I am an individual over 18 years old and competent to make this Declaration.

2.  If called upon to do so, I could and would competently testify to the facts set forth in this Declaration.

3.  The facts set forth below are true of my personal knowledge.

4.  I am the attorney for the Debtors.  I am a State Bar Certified Bankruptcy Specialist and I have filed thousands of cases.

5.  Debtors filed a chapter 7 petition on September 29, 2021, known as case number 6:21-bk-15157-MH.

6.  The Trustee has continued the 341a 11 times.  I've been in communication with counsel for the Trustee and we have exchanged extensive documentation.

7.  In my last correspondence with Trustee's counsel, I advised we would be filing a motion to compel abandonment.  Trustee's Counsel advised she was going to file a motion to compel abandonment.  So, I stated we would wait to file our motion and just respond to the objection as it would be unlikely the court would rule on a motion to compel when there was an objection pending.

8.  Debtors disagree with Trustee's value of $520,000 and because there was no factual basis for that number provided in Trustee's moving papers, Debtors obtained a Broker's Price Opinion. The Broker valued the property at $440,000.  The Broker's declaration and BPO are filed herewith.

/ / /

/ / /

/ / /

J. DOLING LAW, PC

4854-9137-2344, v. 2

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct.

3    Executed on this <u>7th</u> day of October 2022, at San Diego, California.

4    /s/ *Jenny L. Doling*

5    _____

6    Jenny L. Doling
     Attorney for Debtors

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



4854-9137-2344, v. 2

## DECLARATION OF TRACI MONIOT
## REGARDING VALUATION OF DEBTOR'S REAL PROPERTY

I, Traci Moniot, hereby declare as follows:

1.  I am a California State-Licensed Broker, and my license number is #01349957. I was hired by Robert Nathan Reicher and Suzanne P Carter-Reicher to value the real property located at: 37300 Medjool Avenue, Palm Desert, California 92211 ("Real Property").

2.  I make this declaration based upon my personal and firsthand knowledge, my education, training and experience in the field of real estate and real estate values, and if called upon to testify as a witness, I could and would competently testify under oath thereto.

3.  I have held a Real Estate License since 2002 and received my Broker's License in 2012.

4.  On October 8, 2022, I valued the real property located at: 37300 Medjool Avenue, Palm Desert, California 92211, having Assessor's Parcel Number: 748-140-048-2.  I then prepared a Broker's Price Opinion Report ("BPO") for said Real Property at the request of the Debtors in this matter, Robert Nathan Reicher and Suzanne P Carter-Reicher.  Attached hereto as **Exhibit F** and incorporated by reference is a true and correct copy of the subject BPO.

5.  After the physical inspection of the subject residence, I investigated the sales of similar properties, and determined a fair value of the subject property.

6.  In determining a fair and accurate value of the subject real property, I searched within close proximity of the subject property to find sales for similar properties. I took into consideration the location, the lot size, the property's square footage, as well as, the year built, and the number of bedrooms and bathrooms.

7.  I consider the sales comparison approach to be the most reliable in determining a fair value because it more accurately simulates buyers' perceptions and actions, and what they would pay for a property.

J. DOLING LAW PC

8.    Based upon my personal observations, inspection of the subject property, and the market research, as well as my training, education, and experience in the real estate market in which Mr. and Mrs. Reicher's property is located, it is my professional opinion that the subject Real Property has a value of $440,000.00.

9.    I have no present or contemplated future interest in the subject Real Property. Neither my employment, nor my compensation for this Broker's Price Opinion is contingent upon the value found.

    I declare under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

    Executed this <u>11th</u> day of October 2022.

Traci Moniot
Indian Springs Real Estate
79-940 Westward Ho Drive
Indio, CA 92201
Broker Lic.#01349957



DECLARATION OF TRACI MONIOT
-2-

**DOC # 2018-0454033**
11/16/2018 04:55 PM Fees: $65.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

Recording requested by:
Lawyers Title - IE
3480 Vine Street Suite 300
Riverside, CA 92507

When Recorded Mail to:
Broker Solutions Inc, DBA New American Funding
14511 Myford Rd. Suite 100
Tustin, CA 92870

THIS SPACE FOR RECORDERS USE ONLY

| | |
|---|---|
| Title Number: | 618694278 |
| Escrow Number: | PSL11756-140-KR |
| APN Number: | 748-140-048-2 / TRA: 075-135 |

# Deed of Trust

## DOCUMENT TITLE

Exempt from fee per GC 27388.1 (a) (2); recorded concurrently in connection with a transfer
subject to the imposition of documentary transfer tax

**EXHIBIT A (Page 1 of 18)**

Recording Requested By:
Broker Solutions, Inc. dba New American Funding

When Recorded, mail to:
Broker Solutions, Inc. dba New American Funding
14511 Myford Road,  Suite 100
Tustin, CA 92780

_____ [Space Above This Line For Recording Data] _____

**State of CALIFORNIA**                          FHA Case No. 194-0421229-961
MIN: 1003763-0005000596-4                 Loan No. 1218109503

<div align="center">

## PURCHASE MONEY
## FIXED RATE
## HOME EQUITY CONVERSION DEED OF TRUST

### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

</div>

THIS SECURITY INSTRUMENT SECURES A LOAN THAT
PROVIDES FOR NEGATIVE AMORTIZATION AND
COMPOUNDING OF INTEREST. INTEREST THAT IS
UNPAID WILL BE ADDED TO PRINCIPAL AND INTEREST
WILL BE CHARGED THEREON.

**This Deed of Trust involves the purchase of real property that is a residential dwelling to an
owner-occupier, and is exempt from Government Code section 27388.1.**

THIS DEED OF TRUST ("Security Instrument") is made on **November 15, 2018**. The trustor is
**ROBERT N REICHER AND SUZANNE P REICHER, HUSBAND AND WIFE AND ELEANOR
G REICHER, A WIDOW AS JOINT TENANTS** , whose address is  **37300 Medjool Avenue, Palm
Desert, California 92211** ("Borrower").  Borrower is a trustor who is an original borrower under the
Loan Agreement and Note.  The term "Borrower" does not include the Borrower's successors and
assigns. Trustor is an original trustor under this Security Instrument.  The term "Trustor" includes
Trustor's heirs, executors, administrators, and assigns.  The trustee is **LAWYERS TITLE COMPANY,
400 S FARRELL DRIVE, SUITE B202, PALM SPRINGS, CA 92262** ("Trustee"). The beneficiary
is **Mortgage Electronic Registration Systems Inc. ("MERS")**, which is organized and existing under
the laws of **Delaware**, and whose address is **P.O. Box 2026, Flint, MI 48501-2026, telephone (888)
679-MERS. Broker Solutions, Inc. dba New American Funding is organized and existing under
the laws of California, and has an address of 14511 Myford Road,  Suite 100, Tustin, CA 92780**
("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance,
including future advances made on Borrower's behalf, under the terms of a Home Equity Conversion
Mortgage Fixed Rate Loan Agreement dated the same date as this Security Instrument ("Loan
Agreement"). The agreement to repay is evidenced by Borrower's Fixed-Rate Note dated the same date

<div align="center">

**EXHIBIT A (Page 2 of 18)**

</div>

as this Security Instrument ("Note").  **The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a fixed rate (interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Four Hundred Sixty Eight Thousand Dollars and Zero Cents (U.S. $468,000.00)**; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Note and Loan Agreement. For this purpose, Borrower and Trustor irrevocably grant, convey and assign to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, the following described property located in **RIVERSIDE** County, CALIFORNIA:

**See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes**

which has the address of
**37300 Medjool Avenue, Palm Desert, California 92211**, ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER AND TRUSTOR COVENANTS that each is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower and Trustor warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower, Trustor and Lender covenant and agree as follows:

**1. Payment of Principal and Interest**. Borrower shall pay when due the principal of **$468,000.00**, and interest on the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of property taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other special assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges as provided for and in accordance with the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property,

**EXHIBIT A (Page 3 of 18)**

whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including, but not limited to, fire and flood, for which Lender requires insurance. Such insurance shall be maintained in the amounts, and for the periods that Lender requires; Lender has the discretion to increase or decrease the amount of any insurance required at any time provided the amount is equal to or greater than any minimum required by the Federal Housing Commissioner ("Commissioner"). Whether or not Lender imposes a flood insurance requirement, Borrower shall at a minimum insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Commissioner. If the Lender imposes insurance requirements, all insurance shall be carried with companies approved by Lender, and the insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any  indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence within 60 days after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of this Security Instrument.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 14(c).

If Borrower fails to make these payments or pay the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in

bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of property taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Commissioner for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied   to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Commissioner .

**9. Non-Borrowing Spouse.**  Borrower, **N/A** is married under the laws of **California** to **N/A** ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the "Note," "Loan Agreement" or this Security Instrument.

> **(a)** Eligible Non-Borrowing Spouse - A Non-Borrowing Spouse identified by the Borrower who meets, and continues to meet, the Qualifying Attributes requirements established by the Commissioner that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

> **(b)** Ineligible Non-Borrowing Spouse - A Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Commissioner that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

**EXHIBIT A (Page 5 of 18)**

**10. Grounds for Acceleration of Debt.**

**(a) Due and Payable - Death.**

(i) Except as provided in Paragraph 10(a)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

(ii) Lender shall defer the due and payable requirement under Paragraph 10(a)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 qualifies as an Eligible Non-Borrowing Spouse and certifies all of the following conditions are, and continue to be, met:

    a.    Such Eligible Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;

    b.    Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy, the Property as [his/her] Principal Residence;

    c.    Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;

    d.    All other obligations of the Borrower under the Note, the Loan Agreement and this Security Instrument continue to be satisfied;

    e.    The Note is not eligible to be called due and payable for any other reason; and

    f.    If requested by Lender, such Eligible Non-Borrowing Spouse and the Trustor, if different, sign an enforceable agreement suspending the statute of limitations applicable to the enforcement of a real property lien (including, without limitation, as pursuant to California Civil Code Section 1923.2) and any other document(s) Lender deems necessary to preserve (I) the priority of Lender's lien on the Property, (II) Lender's right to foreclose the security interest in the Property, and (III) Lender's right to exercise its default remedies available under this Security Instrument and the Note.

This sub paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met, such a deferral shall immediately cease and the Note will become immediately due and payable in accordance with the provisions of Paragraph 6(A)(i) of the Note.

**(b) Due and Payable - Sale.** Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under this Paragraph.

HECM First Deed Of Trust-2017

**(c) Due and Payable with Commissioner Approval.** - Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Commissioner, if:

(i) The Property ceases to be the Principal Residence of a Borrower for reasons other than death and the Property is not the Principal Residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal Residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under this Paragraph 10(c).

**(d) Notice and Certification to Lender.** Borrower shall complete and provide to the Lender on an annual basis a certification, in a form prescribed by the Lender, stating whether the Property remains the Borrower's Principal Residence and, if applicable, the Principal Residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in Paragraph 9 and the identified Non-Borrowing Spouse qualifies as an Eligible Non-Borrowing Spouse, the Borrower shall also complete and provide to the Lender on an annual basis an Eligible Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the annual Principal Residence certification must continue to be completed and provided to the Lender by the Eligible Non-Borrowing Spouse. The Borrower shall also notify Lender whenever any of the events listed in Paragraph 10 (b) and (c) occur.

**(e) Notice to Commissioner and Borrower.** Lender shall notify the Commissioner and Borrower whenever the loan becomes due and payable under Paragraph 10 (b) and (c). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or ninety-five percent (95%) of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(f) Notice to Commissioner and Eligible Non-Borrowing Spouse.** Lender shall notify the Commissioner and any Eligible Non-Borrowing Spouse whenever any event listed in Paragraph 10 (b) and (c) occurs during a Deferral Period.

**(g) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Commissioner, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall

**EXHIBIT A (Page 7 of 18)**

not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 10.

**(h) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Commissioner dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Commissioner.

**11. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Commissioner upon demand by the Commissioner, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**12. Reinstatement by Borrower.**  Borrower has a right to be reinstated if Lender has required immediate payment in full.  This right applies even after foreclosure proceedings are instituted.  To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full.  Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the Principal Balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of this Security Instrument.

**13. Deferral Period Reinstatement.** If a Deferral Period ceases or becomes unavailable because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has become an Ineligible Non-Borrowing Spouse, neither the Deferral Period nor this Security Instrument may be reinstated.  In the event a Deferral Period ceases because an obligation of the Note, the Loan Agreement, or this Security Instrument has not been met or the Note has become eligible to be called due and payable and is in default for a reason other than death, an Eligible Non-Borrowing Spouse may have a Deferral Period and this Security Instrument reinstated provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days.  A Lender may require the Eligible Non-Borrowing Spouse to pay for foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding, such costs may not be added to the Principal Balance.  Upon reinstatement by an Eligible Non-Borrowing Spouse, the Deferral Period and this Security Instrument and the obligations that it secures shall remain in effect as if the Deferral Period had not ceased and the Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i)the Lender has accepted a reinstatement of either the Deferral Period or this Security Instrument within the past two (2) years immediately preceding the current notification to the Eligible Non-Borrowing Spouse that the mortgage is due and payable; (ii) reinstatement of either the Deferral Period or this Security Instrument will preclude foreclosure in the

future, or (iii) reinstatement of either the Deferral Period or Security Instrument will adversely affect the priority of this Security Instrument.

## 14. Lien Status.

### (a) Modification.

Borrower and Trustor agree to extend this Security Instrument in accordance with this Paragraph 14(a). If Lender determines that the original lien status of this Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by this Security Instrument equals or exceeds the maximum principal amount stated to be secured by the lien of this Security Instrument or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower and Trustor to execute any documents necessary to protect the lien status of future loan advances. Borrower and Trustor agree to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

### (b) Tax Deferral Programs.

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

### (c) Prior Liens.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operates to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

HECM First Deed Of Trust-2017

**15. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**16. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Commissioner. Borrower's covenants and agreements shall be joint and several.

Notwithstanding anything to the contrary herein, upon the death of the last surviving Borrower, the Borrower's successors and assigns will be bound to perform Borrower's obligations under this Security Instrument.

**17. Notices.** Any notice to Borrower or Trustor provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Notices to Trustor shall be given at the address provided by Trustor to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to a Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower, Lender, Trustor or Non-Borrowing Spouse when given as provided in this Paragraph 17.

**18. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**19. Borrower's and Trustor's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument, and Trustor shall be given one conformed copy of this Security Instrument.

**20. Third-Party Beneficiary.** Except as set forth in Paragraph 10(a)(ii) and only for an Eligible Non-Borrowing Spouse, this Security Instrument does not and is not intended to confer any rights or remedies upon any person other than the parties. Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender.

**21. Capitalized Terms.** Capitalized terms not defined in this Security Instrument shall have the meanings ascribed to them in the Loan Agreement.

NON-UNIFORM COVENANTS. Borrower, Trustor and Lender covenant and agree as follows:

**22. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in this Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 22.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**23. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 10, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this Paragraph 23, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law,  Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder  at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**24. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over

HECM First Deed Of Trust-2017

any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**25. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan. Agreement shall be deemed obligatory.

**26. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property as permitted under applicable law. If the fee charged does not exceed the fee set by applicable law, the fee is conclusively presumed to be reasonable.

**27. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**28. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and Trustor, and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider            ☒ Planned Unit Development Rider

☐ Other [Specify]

**30. Purchase Money.** The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property.

**31 . Nominee Capacity of MERS.** MERS serves as beneficiary of record and secured party solely as nominee for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein.  All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Beneficiary herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns.  If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Deed of Trust.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address of the Borrower set forth above. A copy of any Notice of Default and any Notice of sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.*

_____ (SEAL)          11/15/18
ROBERT N REICHER                         Date

_____ (SEAL)          11/15/18
SUZANNE P REICHER                        Date

_____ (SEAL)          11/15/18
ELEANOR G REICHER                        Date

_____ **[Space Below This Line For Acknowledgment]** _____

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of CALIFORNIA
County of *ORANGE*

On *Nov 15, 2018* before me, *BERNARD WIDYNSKI, NOTARY PUBLIC*, personally appeared
*ROBERT N REICHER AND SUZANNE P REICHER AND ELEANOR G. REICHER*, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

> BERNARD WIDYNSKI
> Notary Public - California
> Orange County
> Commission # 2171414
> My Comm. Expires Dec 9, 2020

Signature _____ (Seal)
*BERNARD WIDYNSKI, NOTARY PUBLIC*

**Loan Originator Organization**

Mortgage Loan Originator Organization:       **Broker Solutions, Inc. dba New American Funding**
Nationwide Mortgage Licensing system and Registry Identification Number:       **6606**

**Individual Loan Originator**

Mortgage Loan Originator:       **Michael Zwerling**
Nationwide Mortgage Licensing system and Registry Identification Number:       **61166**

**EXHIBIT A (Page 14 of 18)**

# EXHIBIT A

Exhibit A to the Security Instrument made on **November 15, 2018,** by **ROBERT N REICHER AND SUZANNE P REICHER, HUSBAND AND WIFE AND ELEANOR G REICHER, A WIDOW AS JOINT TENANTS** ("Borrower")    to **Mortgage Electronic Registration Systems, Inc. ("MERS")** ("Beneficiary"). The Property is located in the county of **RIVERSIDE**, state of **California**, described as follows:

## Description of Property

SEE ATTACHED EXHIBIT "A"

**EXHIBIT A (Page 15 of 18)**

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 36, OF TRACT NO. 27404, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 262 PAGES 100 TO 105, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 748-140-048-2

# Planned Unit Development Rider
# (Home Equity Conversion Mortgage)



FHA Case Number: **194-0421229-961**

THIS PLANNED UNIT DEVELOPMENT RIDER is made on **11/15/2018** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Broker Solutions, Inc. dba New American Funding**("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**37300 Medjool Avenue, Palm Desert, California 92211**

The Property is a part of a planned unit development ("PUD") known as

**Sun City Palm Desert**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

**EXHIBIT A (Page 17 of 18)**

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

ROBERT N REICHER                                                11/15/18
                                                                Date

SUZANNE P REICHER                                               11/15/18
                                                                Date

ELEANOR G REICHER                                               11/15/18
                                                                Date



P.O. Box 40724
Lansing MI 48901-7924

# Monthly Reverse Mortgage Statement

Reverse Mortgage Funding LLC
P.O. Box 40724
Lansing MI 48901-7924
Customer Service: (866) 654-0020
Email Address: bc@reversedept.com
www.reversedepartment.com

Date Printed: October 06 2022

0010474-0049604 PDFT  001 ----- 460824 F000  M

|ılıllıılıılılıılıllılılılılılıllılılıılıllılıılıl
ROBERT N REICHER
SUZANNE REICHER
37300 MEDJOOL AVE
PALM DESERT, CA 92211-1393

| Account Number: | 2233 |
| --- | --- |

Loan Type:  HECM
Current Loan Status:  Active
Credit Type:  Closed end

## THIS IS NOT A BILL

| Property: 37300 Medjool AVENUE Palm Desert, CA 92211 |
| --- |
| Statement Period: September 01 2022 to September 30 2022 |

### Principal Limit Information

| | |
| --- | --- |
| Current Principal Limit | $194,670.00 |
| Service Fee Set Aside | $0.00 |
| Current Total Loan Balance | $194,250.48 |
| Repair Set Aside | $0.00 |
| Tax & Insurance Set Aside | $0.00 |
| 1st Year Property Charges Set Aside | $0.00 |
| **Current Net Principal Limit** | **$0.00** |

## ***PLEASE READ THESE IMPORTANT MESSAGES***

**> Manage your reverse mortgage loan securely online at www.reversedepartment.com. If you need help registering for an online account, view our helpful tutorial video posted on the homepage. Some features include:**
**\*\*NEW\*\*** Instructional videos: Help with registering an account, managing your account online, and property loss & insurance claim information
\* Opt-in for paperless statements online
\* Complete your Annual Occupancy Certification online (when it is time, you will see a banner when you log in)
\* View your transaction history and account statements
\* Request funds from your line of credit
\* Obtain a payoff quote
\* Access common questions and forms

**> How to Read My Reverse Mortgage Statement**
If you have questions on how to read your monthly statement, we have provided a helpful guide on our Borrower Portal at **www.reversedepartment.com/helpful-resources**.

Please see enclosed Credit Disclosures and other Important Disclosures

## EXHIBIT B (Page 1 of 4)

## CREDIT DISCLOSURE STATEMENT

### ANNUAL PERCENTAGE RATE (APR)

Your loan has a fixed interest rate, so it will never increase or decrease over the life of your loan. To find the interest rate on your loan, please see the "Interest Rate" section on your reverse mortgage statement.

### FINANCE CHARGES

Each advance made to you under your loan will be subject to a **FINANCE CHARGE** beginning on the day after each advance is made. A **FINANCE CHARGE** will continue to be assessed on your loan until the entire outstanding balance and all fees due under the Note(s), Security Instrument(s) and Loan Agreement are paid.

### INTEREST

The interest portion of the **FINANCE CHARGE** on your loan is computed by (i) calculating the **FINANCE CHARGE** on the balance existing at the beginning of each month, taking into consideration any payments or credits to your loan during the month, (ii) calculating the **FINANCE CHARGE** on each advance made to you during the month, and (iii) adding all of these sums together.

We start with the outstanding principal balance on your loan at the beginning of each month, which includes **FINANCE CHARGES** from the prior month (the "Previous Outstanding Principal Balance"). At the end of each month, we divide the then-current **ANNUAL PERCENTAGE RATE** by 12 (the "Monthly Periodic Rate") and multiply the result of this calculation by the Previous Outstanding Principal Balance.

If you make a payment or we receive a credit to your loan during the month, we divide the then-current **ANNUAL PERCENTAGE RATE** by 365 (the "Daily Periodic Rate") and multiply the result of this calculation by the amount of the payment or credit. We multiply the resulting amount by the number of days remaining in the month after the payment or credit was received (not including the day the payment or credit was received). We then subtract this amount from the product of the Monthly Periodic Rate and the Previous Outstanding Principal Balance.

At the end of each month in which any advances have been made to you or on your behalf, we multiply the amount of the advance by the number of days remaining in the month after that advance was made (not including the day the advance was made) and then multiply this amount by the Daily Periodic Rate. This calculation is repeated for each advance made to you during the month including, but not limited to, advances made to pay fees or **FINANCE CHARGES** on your loan.

The sum of the final result of these calculations equals the interest portion of your **FINANCE CHARGE** for the month.

### MORTGAGE INSURANCE PREMIUMS ("MIP")

If you have a HECM loan, MIP, which are a **FINANCE CHARGE**, are computed by (i) calculating the MIP on the Previous Outstanding Balance, taking into consideration any payments or credits to your loan during the month, (ii) calculating the MIP on each advance to you during the month, and (iii) adding all these sums together.

At the end of the month, we divide the monthly MIP rate determined by the Department of Housing & Urban Development (HUD) by 12 (the "MIP Monthly Periodic Rate") and multiply the result of this calculation by the Previous Outstanding Principal Balance.

If you make a payment or we receive a credit to your loan during the month, we divide the monthly MIP rate determined by HUD by 365 (the "MIP Daily Periodic Rate") and multiply the result of this calculation by the amount of the payment or credit. We multiply the resulting amount by the number of days remaining in the month after the payment or credit was received (not including the day the payment or credit was received). We then subtract this amount from the product of the MIP Monthly Periodic Rate and the Previous Outstanding Principal Balance.

At the end of each month in which any advances have been made to you, we multiply the amount of the advance by the number of days remaining in the month after that advance was made (not including the day the advance was made) and then multiply this amount by the MIP Daily Periodic Rate. This calculation is repeated for each advance made to you during the month.

The sum of the result of these calculations equals the MIP portion of your **FINANCE CHARGE** for the month.

### MONTHLY SERVICING FEE

If your loan has a flat Monthly Servicing Fee, this fee, if applicable, equals the monthly servicing fee portion of your **FINANCE CHARGE** for the month.

### BILLING RIGHTS SUMMARY

If you think your monthly statement is wrong, or if you need more information about a transaction on your statement, please write us as soon as possible to the address shown below. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and loan number.
- The dollar amount of the suspected error.
- Describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

We will respond to your inquiry within 30 days of our receipt. If you have any questions, please call **1-866-654-0020**.

While we investigate your question, you will not be charged for any transaction in question and interest will not accrue on any amount in question, but you will be charged for any transaction on your statement that is not in question and interest will accrue on any amount that is not in question. We also cannot take any action to collect the charge and/or amount you question.

**Send notice of statement error or address correction to:**

**Reverse Mortgage Servicing Department
PO Box 40719
Lansing, MI 48901-7919**

SL1Fixed_111021

FOR QUESTIONS ON YOUR LOAN, ~~please call Reverse Mortgage 1-866-654-0020 M-Th~~ **EXHIBIT B (Page 2 of 4)** 8AM-8PM or Fri 8AM-5PM EST.

0010474-0049605

### Interest Rate Information

**Interest Rate September 2022**

| | MIP Rates | Loan Interest Rates |
|---|---|---|
| Sept. Daily Periodic Rate | 0.00137% | 0.01181% |
| Sept. Monthly Periodic Rate | 0.04167% | 0.35917% |
| Sept. Annual Periodic Rate | 0.50000% | 4.31000% |

### Interest Rate Change Notice

The interest rate on your reverse mortgage is fixed at the rate listed above over the life of your loan.

### Detailed Transaction Information

| Date | Description | Amount |
|---|---|---|
| 08/31/2022 | Previous Total Loan Balance | $193,474.97 |
| 09/30/2022 | Monthly Interest | $694.90 |
| 09/30/2022 | Monthly Mortgage Insurance Premium | $80.61 |
| 09/30/2022 | **Current Total Loan Balance** | **$194,250.48** |

### Total Year to Date Activity Summary

| Description | Total |
|---|---|
| Mortgage Insurance Premiums Accrued | $714.04 |
| Interest Deferred | $6,155.14 |

## EXHIBIT B (Page 3 of 4)

## IMPORTANT DISCLOSURES

If you are currently in a bankruptcy proceeding or have received a discharge in bankruptcy, this communication is for informational purposes only and is not an attempt to collect a debt.  If you are represented by an attorney, please provide this notice to your attorney.

We use third-party providers to perform certain services. We remain responsible for all actions taken by such third-party providers with respect to such services.

### Notice of Error and Request for Information
Federal law gives customers the right to notify us of an error regarding the servicing of their loan or to request information regarding their loan. If you wish to provide a notice of error or a request for information, you must write to us at the following address: PO Box 40719, Lansing, MI 48901.  The letter must provide the customer's name, loan number, and description of the error or detailed list of the information being requested.

### If your property is located in the State of Texas:
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above by telephone listed above or by email at smlinfo@sml.texas.gov.

### If your property is located in the State of New York:
Your servicer is either a registered servicer or exempt servicer registered with the Superintendent of the New York State Department of Financial Services.  For further information or to make a complaint regarding your servicer you may contact the New York State Department of Financial Services Consumer Assistance Unit at (800) 342-3736 or by visiting www.dfs.ny.gov.

### If your property is located in the State of Arkansas:
Your servicer is licensed in Arkansas and complaints about your servicer may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free at (800) 981-4429.

### If your property is located in the State of Oregon:
Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (866) 654–0020 or by email at BC@reversedepartment.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

### If your property is located in the State of Hawaii:
Your servicer is a licensed mortgage servicer in Hawaii.  Complaints may be submitted to the Hawaii Department of Financial Institutions at P.O. Box 2054, Honolulu, Hawaii 96805 or dfi@dcca.hawaii.gov.  A complaint form and instructions regarding how to file a complaint are available at http://cca.hawaii.gov/dfi/file-a-complaint/.



**EXHIBIT B (Page 4 of 4)**

DOC # 2018-0454032
11/16/2018 04:55 PM Fees: $17.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**RECORDING REQUESTED BY**
Lawyers Title - IE
**WHEN RECORDED MAIL THIS DOCUMENT
AND TAX STATEMENTS TO:**
**Robert Nathan Reicher and
Suzanne Patricia Reicher
37300 Medjool Avenue
Palm Desert CA 92211**
APN: **748-140-048-2**
**TRA: 075-135**
Escrow No:**PSL11756**
Title No: **618694278**

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MARY #420

Space above this line for Recorder's use

# GRANT DEED

**THE UNDERSIGNED GRANTOR(S) DECLARE(S)**
DOCUMENTARY TRANSFER TAX IS $343.30 CITY TRANSFER TAX **$0.00**
- ☒ **computed on full value of property conveyed**
- ☒ **City of Palm Desert**
- ☒ **Exempt from fee per GC 27388.1 (a) (2); recorded concurrently in connection with a transfer
  subject to the imposition of documentary transfer tax , AND**

**FOR A VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged,

**Charlene Maselskis Courbet, as Surviving Trustee of The Thomas Anthony Courbet & Charlene Maselskis
Courbet Family Trust dated November 25, 1990**

hereby GRANT(S) to
**Robert N. Reicher and Suzanne P. Reicher, husband and wife** and **Eleanor G. Reicher, a widow
as joint tenants**
the following described real property in the City of Palm Desert, County of Riverside, State of
CALIFORNIA:
**For legal description of the real property herein, see Exhibit A attached hereto and
made a part hereof.**

Commonly known as: 37300 Medjool Avenue, Palm Desert, CA 92211

Dated: September 10, 2018

The Thomas Anthony Courbet & Charlene Maselskis Courbet Family Trust dated November 25,
1990

*Charlene Maselskis Courbet, Trustee*

By: Charlene Maselskis Courbet, Trustee

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

STATE OF CALIFORNIA                              )
COUNTY OF Riverside                              ) SS.
                                                 )
On Sept 12, 2018       before me, K. Rogers                    , Notary Public, personally
appeared Charlene Maselskis Courbet                                                        ,
who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Signature

K. ROGERS
Notary Public - California
San Bernardino County
Commission # 2157249
My Comm. Expires Jun 19, 2020

**EXHIBIT C (Page 1 of 2)**

## Exhibit A

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 36, OF TRACT NO. 27404, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 262 PAGES 100 TO 105, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 748-140-048-2

**EXHIBIT C (Page 2 of 2)**



| Lawyers Title Company<br>400 S. Farrell Drive, Suite B202 Palm Springs CA 92262<br>Phone: (760) 327-6523<br>Fax: (760) 318-0973<br>Escrow Officer: Kimberly Rogers | <br>PSL11756-KR |

## Buyer's / Borrower's Settlement Statement - Final

**Property:** 37300 Medjool Avenue, Palm Desert, CA 92211

**Closed Date:** 11/16/2018
**Loan Number:** 1218109503
**Disbursement Date:** 11/19/2018

**Buyer:**  Robert N. Reicher and Suzanne P. Reicher
Eleanor G. Reicher

**Escrow Number:** PSL11756-KR

|  | Debits | Credits |
|---|---|---|
| **Purchase Price** | | |
| Purchase Price | $312,000.00 | |
| **Deposits** | | |
| Earnest Money | | $10,000.00 |
| Deposit by Buyer | | $90,300.00 |
| Deposit by Buyer | | $29,500.00 |
| Third Party Deposit - Buyer from BRENT BALL OR CHRISTINA BALL | | $40,000.00 |
| **New Loan 1 (Loan# : 1218109503)** | | |
| Principal amount of new loan(s) $161,304.00 | | $161,304.00 |
| Appraisal Fee to US Appraisal | $500.00 | |
| Credit Report to Broker Solutions Inc, DBA New American Funding | $40.00 | |
| Flood Certification to Broker Solutions Inc, DBA New American Funding | $16.50 | |
| Mortgage Insurance Premium to HUD | $6,240.00 | |
| Origination Fee to includes HECM origination fee of $5,120.00 | $5,306.95 | |
| Tax Cert to Broker Solutions Inc, DBA New American Funding | $50.00 | |
| **Prorations** | | |
| County Taxes (Paid) 1791.9900/6 mos for 11/16/18 thru 01/01/19 | $448.00 | |
| HOA Dues 887.9700/qtr for 11/16/18 to 01/01/19 | $443.98 | |
| **Escrow Charges** | | |
| Mobile Signing/Notary Service to Bancserv | $200.00 | |
| New Loan Services Fee to Lawyers Title Company | $340.00 | |
| **Escrow Fees** | | |
| Escrow Fees to Lawyers Title Company | $924.00 | |
| **Title Charges** | | |
| Lender's Coverage to Lawyers Title Co | $684.00 | |
| Owner's Coverage to Lawyers Title Co | $1,232.00 | |
| Endorsement to Lawyers Title Co | $50.00 | |
| **Recording Fees / Transfer Taxes** | | |
| County Transfer Taxes | $343.20 | |
| Recording Service Fee to Synrgo | $14.00 | |
| Recording Fees | $82.00 | |
| **Additional Settlement Fees** | | |
| HOA Transfer Fee to SUN CITY PALM DESERT COMMUNITY ASSOCIATION | $100.00 | |

**EXHIBIT D (Page 1 of 7)**

| | |
|---|---|
| **Lawyers Title** | Lawyers Title Company<br>400 S. Farrell Drive, Suite B202 Palm Springs CA 92262<br>Phone:  (760) 327-6523<br>Fax:  (760) 318-0973<br>Escrow Officer:  Kimberly Rogers |



PSL11756-KR

## Buyer's / Borrower's Settlement Statement - Final

| | Debits | Credits |
|---|---|---|
| Home Warranty to First American Home Warranty | $515.00 | |
| Homeowner's Insurance to Mercury Insurance | $1,052.85 | |
| HECM Counseling Fee to GreenPath, Inc. (POC 199.00) | | |
| Property Disclosure Reports to Disclosure Source | $99.00 | |
| Termite Inspection to TRANSACTION TERMITE, INC. | $105.00 | |
| **Proceeds or Balance Due** | | |
| Borrower Refund | $317.52 | |
| **Balance Due** | | $0.00 |
| Totals: | | |
| | $331,104.00 | $331,104.00 |

**Save this Statement for Income Tax purposes.**

**EXHIBIT D (Page 2 of 7)**



UnionBank PRIORITY BANKING

**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| 0710059500 | 000077490504 | 09/28/2018 | $ 44,018.06 |

GRANITE Escrow & Settlement Services
450 Newport Center Drive, Suite 600
Newport Beach, CA 92660 | (949) 720-0110
TRUST ACCOUNT

CITY NATIONAL BANK TREASURY SERVICES LOS ANGELES, CA 90071 16-1606/1220

49288

Escrow No. 04-41141-JAM
Date 9/27/2018
Amount $ 49,018.06

PAY FORTY NINE THOUSAND EIGHTEEN AND 06/100 DOLLARS

To The Order Of
ROBERT NATHAN REICHER AND SUZANNE PATRICIA REICHER
44 Baycrest Court
Newport Beach, CA 92660

VOID AFTER 180 DAYS

Ref:

⑈49288⑈ ⑆122016066⑆ 555⑈27760 1⑈

ENDORSEMENT AREA: Know Your Endorser. Require Identification.

X

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE(S)
MUFG Union Bank, N.A.
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *

THIS DOCUMENT INCLUDES THE FOLLOWING SECURITY FEATURES: EXCEEDING FSA GUIDELINES:
- COLORED SECURITY PATTERN ON FACE WITH COPIER "VOID". (VISIBLE WORD "VOID" INDICATES A PROBABLE PHOTOCOPY.)
- INVISIBLE ULTRAVIOLET FLUORESCENT FIBERS FACE AND BACK.
- ULTRAVIOLET DULL PAPER.
- ARTIFICIAL "SECURE DOCUMENT" WATERMARK VISIBLE ON BACK WHEN HELD AT AN ANGLE.
- PRIMARY INDICATOR STAINS - PROVIDE EVIDENCE OF ALTERATION.
- MICROPRINT ENDORSEMENT LINES ON BACK.
- SECURITY SCREEN ABSENCE OF "ORIGINAL DOCUMENT" VERBIAGE ON BACK OF CHECK.

ATTEMPTS TO COPY OR CHEMICALLY ALTER THIS DOCUMENT WILL ACTIVATE SECURITY FEATURES.

THIS DOCUMENT MAY INCLUDE A MICROPRINT SIGNATURE LINE.

* FEDERAL BANKING ACT 1987 - FEDERAL RESERVE REG. CC

**EXHIBIT D (Page 3 of 7)**

# Receipt for Wire

## LT - Palm Springs Escrow

## Lawyers Title Company

## 400 S. Farrell Drive, Suite B202

## Palm Springs, CA 92262

---

Receipt #: 159012554
File #: PSL11756-KR
Posted: 11/16/2018 11:51:41 AM
Printed: 11/16/2018 9:37:13 AM
By: Kathy Radogna
Amount: **$29,500.00**
Payor: SUZANNE CARTER-REICHER
Note: 11/16
Memo: OBI=MEDJOOL ESCROW CLOSING FUNDS
Bank:
ABA:
Account #:

| Item | Amount |
|------|--------|
| Deposit by Buyer | $29,500.00 |
| **Total:** | **$29,500.00** |

_____

**Issued By:  Kathy Radogna**

_____

**Approved**

**EXHIBIT D (Page 4 of 7)**

# Receipt for Wire

### LT - Palm Springs Escrow

### Lawyers Title Company

### 400 S. Farrell Drive, Suite B202

### Palm Springs, CA 92262

---

Receipt #: 140003082
File #: PSL11756-KR
Posted: 11/16/2018 11:26:56 AM
Printed: 11/16/2018 11:26:56 AM
By: Kathy Radogna
Amount: **$90,300.00**
Payor: ROBERT REICHER
Note:
Memo: OBI=KIMBERLY ROGERS PSL 11756-140-KR
Bank:
ABA:
Account #:

| Item | Amount |
|------|--------|
| Deposit by Buyer | $90,300.00 |
| **Total:** | **$90,300.00** |

---

**Issued By:  Kathy Radogna**

---

**Approved**

**EXHIBIT D (Page 5 of 7)**

# Receipt for Wire

## LT - Palm Springs Escrow

## Lawyers Title Company

## 400 S. Farrell Drive, Suite B202

## Palm Springs, CA 92262

---

*Receipt #:* 140002936
*File #:* PSL11756-KR
*Posted:* 9/25/2018 10:54:58 AM
*Printed:* 9/25/2018 10:54:58 AM
*By:* Kathy Radogna
*Amount:* **$10,000.00**
*Payor:* SUZANNE CARTER-REICHER
*Note:*
*Memo:* OBI=KIMBERLY ROGERS PSL11756140KR
*Bank:*
*ABA:*
*Account #:*

| *Item* | *Amount* |
|---|---|
| Earnest Money | $10,000.00 |
| **Total:** | **$10,000.00** |

_____

**Issued By:  Kathy Radogna**

_____

**Approved**

**EXHIBIT D (Page 6 of 7)**

# Receipt for Wire

## LT - Palm Springs Escrow

## Lawyers Title Company

## 400 S. Farrell Drive, Suite B202

## Palm Springs, CA 92262

---

Receipt #: 140003038
File #: PSL11756-KR
Posted: 10/29/2018 7:31:41 AM
Printed: 10/29/2018 7:31:41 AM
By: Amparo Rufe-Washington
Amount: **$40,000.00**
Payor: BRENT BALL OR CHRISTINA BALL
Note:
Memo: OBI=PSL11756- LT140-KR,37300 MEDJOOL AVENUE PALM DESERT CA 92211 ORB=021000021 CHASE
MANHATTAN BANK BNF=555295596
Bank:
ABA:
Account #:

| | Item | Amount |
|---|---|---|
| Third Party Deposit - Buyer from BRENT BALL OR CHRISTINA BALL | | $40,000.00 |
| | **Total:** | **$40,000.00** |

---

**Issued By: Amparo Rufe-Washington**

---

**Approved**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Robert Nathan Reicher** |
| Debtor 2 (Spouse, if filing) | **Suzanne P Carter-Reicher** |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1.  **Is this a joint case?**

☐ No. Go to line 2.
☒ Yes. **Does Debtor 2 live in a separate household?**

☒ No
☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**    ☒ No

Do not list Debtor 1 and Debtor 2.    ☐ Yes. Fill out this information for each dependent..............

Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**    ☒ No    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  |  | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $              0.00 |
|  | If not included in line 4: | |
| 4a. | Real estate taxes | 4a. $            342.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $            130.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $            190.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $            288.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $              0.00 |

## EXHIBIT E (Page 1 of 2)

Debtor 1   **Robert Nathan Reicher**
Debtor 2   **Suzanne P Carter-Reicher**                                          Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.   Electricity, heat, natural gas | 6a. | $ | 270.00 |
| | 6b.   Water, sewer, garbage collection | 6b. | $ | 56.00 |
| | 6c.   Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 210.00 |
| | 6d.   Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 800.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 150.00 |
| 10. | **Personal care products and services** | 10. | $ | 76.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 284.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 533.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 100.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 75.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.   Life insurance | 15a. | $ | 400.00 |
| | 15b.   Health insurance | 15b. | $ | 0.00 |
| | 15c.   Vehicle insurance | 15c. | $ | 130.00 |
| | 15d.   Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a.   Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b.   Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c.   Other. Specify: | 17c. | $ | 0.00 |
| | 17d.   Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a.   Mortgages on other property | 20a. | $ | 0.00 |
| | 20b.   Real estate taxes | 20b. | $ | 0.00 |
| | 20c.   Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d.   Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e.   Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify:   **Miscellaneous necessary expenses** | 21. | +$ | 266.00 |
| | **Storage unit** | | +$ | 94.00 |
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | 4,394.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | | $ | 4,394.00 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | 0.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | 4,394.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ | -4,394.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.   | Explain here: |

---

**EXHIBIT E (Page 2 of 2)**

## Broker's Price Opinion



**INDIAN SPRINGS
REAL ESTATE**

**Date:** October 8, 2022

**Subject Property:**

Address:  37300 Medjool Avenue, Palm Desert
Square Footage:  1,664
Lot Size:  5,663
Bedrooms/Baths: 3 bedrooms / 2 baths
Year Built:  1998

**Comparables:**

Address:  78991 Nectarine Drive, Palm Desert
Square Footage:  1,644
Lot Size: 5,663
Bedrooms/Baths:  3 bedrooms / 2 baths
Year Built: 1998
Recording Date: 10/05/22
Selling Price: $450,000
Price Per Square Foot:  $270.43

Address:  36483 Monarch Pass, Palm Desert
Square Footage:  1,644
Lot Size:  6,098
Bedrooms/Baths:  3 bedrooms / 2 baths
Year Built: 1999
Recording Date: 6/21/22
Selling Price:  $490,000
Price Per Square Foot:  294.47

Address:  78336 Kistler Way, Palm Desert
Square Footage:  1,644
Lot Size: 6,098
Bedrooms/Baths:  3 bedrooms / 2 baths
Year Built: 2001
Recording Date: 6/15/22
Selling Price: $535,000
Price Per Square Foot:  $321.51

Address:  78149 Kensington Avenue, Palm Desert
Square Footage:  1,644
Lot Size: 6,098
Bedrooms/Baths:  3 bedrooms / 2 baths
Year Built: 2000
Recording Date: 9/21/22
Selling Price:  $535,000
Price Per Square Foot:  $321.51

**TRACI MONIOT**
INDIAN SPRINGS REAL ESTATE
79-940 WESTWARD HO DRIVE
INDIO, CALIFORNIA  92201
PHONE: (760) 578-8949
FAX: (760) 300-3253
Traci@TraciMoniot.com
BROKER LIC. #01349957

W W W . I N D I A N S P R I N G S R E A L E S T A T E . C O M
**EXHIBIT F (Page 1 of 2)**

Page 2

**Opinion of Value:**

The subject property is located within the Sun City Palm Desert development, a 55+ community. To find the market value of the subject property, I conducted a model match search within Sun City Palm Desert.

My search turned up four comparables of same square footage, similar lot size and without a pool. Please refer to the previous page for details of the comparables.

The subject property was built in 1998 and has had no upgrades or updating done to the home and is in need of deferred maintenance. The best comparable to the subject home is located at 78991 Nectarine Drive which sold for $450,000 with an original list price of $479,000. This was in June 2022 which was prior to the change in the market which has slowed and a slight drop in price we are currently seeing.

Taking into consideration the best comparable selling for $450,000, the subject property with no upgrades and in need of deferred maintenance as well as the current change in the housing market, **I value the subject property at $440,000.**

**EXHIBIT F (Page 2 of 2)**

| | |
|---|---|
| In re:<br><br>**Robert Nathan Reicher**<br>**Suzanne P Carter-Reicher**<br><br>Debtor(s). | CHAPTER: **7**<br><br>CASE NUMBER: **6:21-bk-15157-MH** |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**36-915 Cook Street, Suite 101**
**Palm Desert, CA 92211**

A true and correct copy of the foregoing document entitled (*specify*): <u>**DEBTORS' OPPOSITION TO CHAPTER 7 TRUSTEE'S NOTICE**</u>
<u>**OF MOTION AND MOTION FOR AN ORDER: 1. DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN REAL PROPERTY; 2.**</u>
<u>**DISALLOWING THE DEBTORS' CLAIM OF EXEMPTION IN A BANK ACCOUNT; AND 3. TURNOVER OF NON-EXEMPT FUNDS**</u>
<u>**IN THE BANK ACCOUNT TO THE TRUSTEE WITH DECLARATIONS AND EXHIBITS A-F**</u> will be served or was served **(a)** on the
judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR,
the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>**October 12, 2022**</u>, I checked the
CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail
Notice List to receive NEF transmission at the email addresses stated below:

**Karl T Anderson (TR)    vinland@live.com, kanderson@ecf.axosfs.com**
**Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com**
**Christina J Khil    christinao@mclaw.org, CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com**
**Summer M Shaw    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com**
**United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>**:
On <u>**October 12, 2022**</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours
after the document is filed.

| **JUDGE** | **DEBTOR** | **JOINT DEBTOR** |
|---|---|---|
| **Honorable Mark D. Houle** | **Robert Nathan Reicher** | **Suzanne P Carter-Reicher** |
| **United States Bankruptcy Court** | **37300 Medjool Avenue** | **37300 Medjool Avenue** |
| **3420 Twelfth Street, Suite 325** | **Palm Desert, CA  92211** | **Palm Desert, CA  92211** |
| **Riverside, CA  92501-3819** | | |

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each
person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by
personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be</u>
<u>completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 12, 2022 | Isabel Tostado | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                   **9013-3.1.PROOF.SERVICE**